THE CITY OF HARTFORD vs. THE HARTFORD STREET RAIL-
WAY COMPANY.

First Judicial District, Hartford, October Term, 1900.
ANDREWS, C. J., TORRANCE, BALDWIN, HAMERSLEY and HALL, Js.

Whatever may be the scope and extent of its authority over street rail-
ways, under Chap. 169 of the Public Acts of 1893, a municipality
undoubtedly has the power to order the removal of tracks and other
structures which are not located in accordance with the plan pre-
sented by the railway company and approved by the municipal au-
thorities.

The defendant constructed a cross-over switch at a distance of 500 feet
or more from its designated and approved location, and the munic-
ipal authorities ordered its removal. *Held* that this deviation pre-
vented the defendant from claiming that the cross-over had been
constructed in accordance with the plan approved by the city.

In the present case the cross-over switch was complained of by an ad-
joining landowner and a hearing thereon was had before the board
of street commissioners, at which the defendant was represented;
and it was upon the board's recommendation that the order of re-
moval was passed by the common council. *Held* that under these
circumstances the claim of the defendant, that the removal order
was passed without reasonable notice to the defendant and without
an opportunity of its being heard, was unwarranted.

Notice of the passage of such an order may be given by the city clerk
by mailing a copy of the order to the railway company, and such
service is a sufficient compliance with the implied requirement as
to notice contained in § 3 of the Act of 1893.

The Act of 1895 (Public Acts, Chap. 283) permits the railway company
to appeal "within thirty days after "the service of notice" of any
adverse municipal decision or order. *Held* that no other or further
notice was required than that which was sufficient to make the or-
der obligatory upon the railway company, under § 3 of the Act of
1893.

The trial court refused to issue the writ of mandamus prayed for, solely
because it adjudged that the averments of the application were in-
sufficient as matter of law. *Held* that the discretionary power of
the trial court to refuse the writ was not involved in the ruling so
made, and therefore was not a subject-matter of review in this
court.

Argued October 4th—decided November 1st, 1900.

APPLICATION for a writ of mandamus requiring the de-

fendant to remove a certain cross-over switch on Farmington Avenue in the city of Hartford, brought to the Superior Court in Hartford County and tried to the court, *Robinson, J.*, upon the defendant's motion to quash the alternative writ; the court granted the motion and dismissed the writ, and the plaintiff appealed for alleged errors in the rulings of the court. *Error and judgment reversed.*

The alternative writ was as follows : —

" 1. Whereas the Hartford Street Railway Company, a corporation chartered by the State of Connecticut for the purpose of operating street railways in said State, and now operating railways therein, did on September 5th, 1899, present its petition to the mayor and court of common council of said city of Hartford, setting forth its plan of relocation of its tracks and the laying of additional tracks in said city in accordance with the statutes of the State in such cases made and provided, said proposed location of its tracks being stated in said plan as follows, to wit:

" *First.* Said company proposes to relocate it present existing track and lay one additional track on Farmington Avenue of said city as follows, namely, commencing at and connecting with its present double track on Asylum Street, at the intersection of Asylum and Farmington Avenues, thence running westerly through Farmington Avenue to Prospect Avenue and connecting with the single track at said point.

" *Second.* The track so proposed to be laid as aforesaid will be a double track. The center line between said double tracks will be two feet six inches from the gauge line of each track, and said center line will coincide as nearly as possible with the center line of aforesaid street in which said tracks are to be laid.

" *Third.* It is proposed that the grade of said tracks shall be the same as the grade of the surface of the street in which said tracks are laid.

" For a more particular description of the location of said proposed tracks reference is hereby made to a map which is annexed hereto and made a part hereof.

" There was shown on the said map, described as annexed

to and made a part of said plan, in addition to the said proposed double tracks, four cross-over switches in and between the proposed lines of double tracks. No description of or reference to said cross-over switches is made in any other part of said plan.

"One of said cross-over switches is shown on said map as located between Kenyon and Evergreen Streets, another cross-over near Woodland Street, another cross-over at a point about half way between Imlay and Laurel Streets, and another cross-over is shown on said map as located about four hundred and twenty feet east of Sigourney Street.

"2. And whereas the plan of said Hartford Street Railway Company for relocating its tracks and laying additional tracks in Farmington Avenue, as proposed and shown on its said map, was accepted and adopted by said court of common council September 8th, 1899, and approved by the mayor September 9th, 1899.

"3. And whereas said Hartford Street Railway Company soon thereafter completed the construction of its double tracks and cross-over switches in accordance with the plan accepted and adopted as aforesaid; and one of said cross-over switches was constructed in and between said double tracks located in front of No. 116 Farmington Avenue, which location is about nine hundred and fifty feet east of Sigourney Street, and said railway company, having completed said construction, immediately thereafter commenced to run its cars over said double tracks, and ever since has, and still continues so to do.

"4. And whereas said cross-over having been constructed in front of No. 116, it was found by Charles P. Howard, residing at said number, that the running of the cars on the tracks of said railway company and over the frogs of said cross-over caused so much vibration and noise at his house as to be a great annoyance and discomfort to the occupants thereof. Mr. Howard appeared before the board of street commissioners and remonstrated against the cross-over being continued as located, and a full hearing was had by said board on his complaint, at which hearing said railway company was

represented by Mr. Crawford, its general manager.   As a result of such hearing said board made a report to the court of common council of the city of Hartford as follows, to wit :—

"'HARTFORD, CONN., Nov. 13th, 1899.
"' To the Honorable Court of Common Council:

"' Gentlemen : The board of street commissioners respectfully report that the Hartford Street Railway Company in laying an additional track and relocating its old track on Farmington Avenue have taken out a turnout and replaced same by a cross-over in front of residence of Charles P. Howard.   Mr. Howard has remonstrated against the cross-over being continued as located, as it is the cause of great annoyance to him, in fact the annoyance is so great as to practically become a nuisance.   Mr. Howard's house is situated on about the center of a quicksand bed which covers a large area of this portion of Farmington Avenue.   The railway company asked leave to relocate the cross-over near Beach Street, but the proposition met with almost the unanimous opposition of the neighboring residents, and the change was given up. The cross-over was provided for in a plan submitted to and approved by your honorable court, and is a convenience to the railway company in case of accident or the running of special cars.

'"In looking for a suitable place to relocate the cross-over we find that no one wants it at any point between Asylum Hill and Sigourney Street, and therefore recommend that your honorable court order the removal of the cross-over, which can be done under the Public Acts of 1893, Chapter 169, § 3. The passage of the following resolution is recommended.
"'Board of Street Commissioners,
"' JOSEPH BUTHS, Prest. *pro tem.*

"'Resolved, That the Hartford Street Railway Company be and it hereby is ordered to remove the cross-over located on Farmington Avenue in front of No. 116.'
"5. And whereas said court of common council passed said order on November 13th, 1899, and it was approved by the mayor of said city of Hartford, and on November 15th,

1899, the city clerk of said city served notice of the passage of said order by sending a copy thereof by mail to said Hartford Street Railway Company, and also on said day Charles P. Howard called at the office of said Hartford Street Railway Company and personally notified Mr. Crawford, its general manager, of the passage of said order.

" More than thirty days have elapsed since said notice of its passage was served on said railway company, and no appeal having been taken from said order within said thirty days, the same has become operative and binding on said railway company.

" 6. And whereas the mayor and common council of said city of Hartford in accordance with the provisions of the statutes of the State, have exclusive direction within said city over the placing or locating of any tracks of the said Hartford Street Railway Company in the streets of said city, including the relocating or removal of the same, and may make all orders necessary to the existence of such power of direction and control, and may revise and change any orders made in respect to the location of any such tracks, but, if said railway company has carried out any original order, it may appeal from any alteration, revision, or change thereof, within thirty days from the service of notice upon it of the passage of such order revising or changing such former order, to the Superior Court or a judge thereof.

" And it is further required by said statutes that said railway company shall at its own expense comply with and carry out such orders forthwith, and in case of its failure so to do said city of Hartford may carry out said order and recover the expense thereof from said railway company, or may proceed by a writ of mandamus to compel said railway company at its own expense to comply with and carry out such order.

" 7. And whereas, on December 26th, 1899, the court of common council of said city of Hartford, passed a resolution as follows, to wit: —

" 'Resolved, That the board of street commissioners be and they are hereby requested to report to this board what action has been taken to cause the removal of the cross-over

on Farmington Avenue, in front of No. 116, under resolu-
tion accompanying report of November 13th, 1899.'

"8. And whereas, on January 8th, 1900, said board of street
commissioners made report as requested in said resolution to
said court of common council as follows, to wit:—

"'HARTFORD, CONN., Monday, January, 8th, 1900.

"'To the Honorable Court of Common Council:

"'Gentlemen:—The board of street commissioners to whom
was referred the resolution concerning the removal of cross-
over on Farmington Avenue, in front of No. 116, beg leave to
report that no action has been taken by this board on the matter
since it submitted its report and accompanying resolution,
November 13th, 1899.

"'In order to forward the matter this board submits a reso-
lution which, if passed, will put same in the hands of the
city attorney for action.

"'Respectfully submitted,

"'Board of Street Commissioners.

"'WM. WALDO HYDE, *President.*

"'Resolved, That the city attorney be and hereby is di-
rected in behalf of the city of Hartford, to proceed by a writ
of mandamus to compel the Hartford Street Railway Com-
pany to comply with and carry out the order of the common
council, passed November 13th, 1899, and approved by the
mayor, requiring said railway company to remove the cross-
over located on Farmington Avenue, in front of No. 116.'

"9. And whereas said resolution was passed by said court
of common council said January 8th, and was approved by
the mayor of said city of Hartford, January 9th, 1900.

"10. And whereas said cross-over in front of No. 116
Farmington Avenue has not been removed, and said Hart-
ford Street Railway Company refuses to remove the same as
required by said order; as by the application on file of Wil-
liam J. McConville, city attorney for the city of Hartford,
and in behalf of the city of Hartford, it is understood.

"Now, therefore, that due and speedy justice may be done
in this behalf, it is hereby required and enjoined of you, the

said Hartford Street Railway Company, that before the first Tuesday of May, 1900, you remove said cross-over located on Farmington Avenue in front of No. 116, as required by the said order of the mayor and court of common council of said city of Hartford, and in all respects to obey said order and conform to the laws of this State in regard thereto, or signify cause to the contrary thereof to this court to be holden at Hartford, within and for the county of Hartford, on the first Tuesday of May, 1900, at ten o'clock in the forenoon."

The motion to quash specifies the following reasons : —

" (1) Because the allegations in said writ and motion contained are insufficient in law to sustain such action.   (2) Because § 3, Chapter 169 of the Public Acts of 1893, permits a municipality to order the removal of street railway tracks, only when such removal is incident to an order for some public improvement in the highway.   (3) Because the authority of the city of Hartford over the tracks of the defendant, constructed under authority of the General Assembly, does not include the right to arbitrarily order such tracks taken up. (4) Because, if the city of Hartford has authority to order a switch track removed except as an incident to a public improvement in the highway, such authority requires said city to provide for the relocation of such switch track.   (5) Because it does not appear that the court of common council referred the resolution containing the alleged order, for a hearing thereon, or gave this company reasonable notice or any notice whatsoever that such proposed order was pending; and it does not appear that this company was ever heard or given opportunity to be heard upon such proposed order. (6) Because it does not appear that there ever has been any service of notice of the passage of the alleged order upon this company.   (7) Because the alleged mailing by the city clerk of a copy of the alleged order addressed to the company, and the alleged notification by word of mouth by one Howard, to this company's manager of the passage of the alleged order, was not a legal or sufficient service of notice of the passage of such order.   (8) Because this company's right of appeal

to the Honorable Superior Court from the alleged order, has not terminated, and will not accrue until due and legal service of notice thereof has been made upon this company. (9) Because it does not appear what modifications in the plans of the street railway company named in the alternative writ were made by the mayor and court of common council of the city of Hartford, nor that, in said plan as modified pursuant to law, the power to locate and relocate switches and turnouts was not delegated to the entire and exclusive control of the board of street commissioners of said city. (10) Because it does not appear that the city of Hartford by its board of street commissioners has not since the alleged passage of said order given directions to this company inconsistent therewith."

The trial court granted the motion to quash, "for the reasons set up in the 1st, 2d, 3d, 4th and 5th paragraphs thereof," and dismissed the alternative writ with costs to the defendant.

The reasons of appeal assign error in these rulings of the trial court.

*Edward B. Bennett* and *William J. McConville*, for the appellant (plaintiff).

*Lucius F. Robinson*, with whom was *John T. Robinson*, for the appellee (defendant).

HAMERSLEY, J. The motion to quash cannot be sustained unless one of the following propositions, affirmed by the plaintiff, is incorrect: 1. The cross-over in question was not constructed in accordance with the plan approved by the mayor and court of common council. 2. The council is authorized by § 3 of the Act of 1893 (Public Acts of 1893, p. 308), to order the removal of a cross-over thus constructed, and such order may be enforced by mandamus. 3. It was not necessary for the council to formally refer the order to the board of street commissioners, and the hearing had before the commissioners was equivalent, for all purposes affecting the order,

to a hearing before the council. 4. The defendant received sufficient notice of the making of the order.

We think each of these propositions is correct.

*First.* It is alleged that the cross-over as approved by the council was one "located about 420 feet east of Sigourney Street"; and that the cross-over constructed by the defendant is "about 950 feet east of Sigourney Street." This difference of more than 500 feet is enough to prevent the defendant (certainly as against any order of the council enforcing its power of control over placing the track) from claiming that the track has been constructed in accordance with the plan approved.

*Second.* Prior to 1893 no street railroad could lay down any rails in the streets of a city except in the manner prescribed by the common council, nor use any new motive power without the permission, subject to revocation, of the mayor and common council. General Statutes, §§ 3595, 3596. Section 1 of the Act of 1893 repealed these sections; and § 2 prescribed the mode of proceeding in using the authority given to any company to construct a street railroad within a city, or to lay down additional tracks; or when it desired to change its motive power. It provided that before exercising the authority to lay down additional tracks, the company must present to the mayor and court of common council for its approval, a plan showing, among other things, the location or position of its tracks in the streets; and it forbade the company to lay any tracks except in accordance with a plan so approved. This section, with the Act of 1895 authorizing in certain cases a judicial review (Public Acts of 1895, p. 630), covers the whole subject of obtaining the special municipal authority necessary to the construction of the tracks in pursuance of the general or legislative authority. But it was deemed necessary that after the tracks of a company had been permanently located in the streets by the approval of a plan as provided in § 2, the mayor and court of common council should not only have direction and control over the placing of tracks in accordance with the plan and over certain matters of detail not specified in the plan, but should have power to revise and change such orders as might

be involved in the approval of the plan, and such as might be made in the exercise of the power of control over its execution. Sections 3 and 11 of the Act were framed to accomplish these purposes. Section 3, whatever other effect it may have, confers on the mayor and court of common council the power of direction and control over placing the tracks and other structures in accordance with the plan approved, and includes the power of directing their removal when not so placed; and provides that orders necessary to the exercise of such power may be enforced by mandamus at the instance of the city. The application of the defendant for approval of its plan for laying an additional track, and the consequent relocation of its existing track, is governed by § 2, and the construction of both tracks, including the cross-over, must be in accordance with the plan approved. When, therefore, the defendant departed from that plan in laying the cross-over, an order to remove the track thus laid was authorized by § 3, and may be enforced by mandamus.

*Third.* While an order like the one in question is not made dependent for its validity on giving the defendant notice of its pendency (although it may be that in common fairness the defendant should in some way have an opportunity to be heard before its final passage), and while the law does not require the council to refer such an order to the board of street commissioners,—yet that board, in the exercise of powers vested in it, might properly consider a complaint from an adjoining landowner who claimed that the track in front of his premises was unauthorized, or practically a nuisance, and after a hearing in pursuance of such complaint upon the question of the removal of the track, at which the defendant was represented, might properly recommend the council to order its removal. An order passed by the council under such circumstances cannot be treated for any purpose as one passed without reasonable notice to the defendant or opportunity to be heard.

*Fourth.* The Act of 1893 requires the order to be in writing and recorded in the city records. It does not provide that it shall be served on the railroad company, nor how it

shall be brought to its notice. We think that a copy of the order sent by the city clerk by mail to the defendant, with actual notice of its passage as alleged in the writ, was notice to the defendant of the passage of the order, within the implied requirements of this section. Assuming, as the defendant claims, that the Act of 1895 should be held, on equitable considerations, to operate as a suspension of the defendant's obligation to obey the order until thirty days from "service of notice" of its passage shall have elapsed, we think the "service of notice" in such case should not be held to require any other notice to the defendant than that sufficient to make the order binding on the defendant under § 3 of the Act of 1893.

It follows that the trial court erred in sustaining the motion to quash on the grounds stated in the order for judgment; and, in the view we have taken of the law, no one of the other grounds specified in the motion is sufficient.

It is urged that the court might, in the exercise of sound discretion, refuse an issue of the peremptory writ; but in this case the court has not reached the question of discretion; it has dismissed the alternative writ solely because it has ruled that the allegations of the writ are insufficient in law. There certainly is nothing in this record to require a refusal of the writ in the exercise of legal discretion, and we are not called upon to review such action.

The writ does not in terms allege that the order was recorded. We do not consider the question whether this omission is a defect which might have been taken advantage of, and if so, whether the informality is such as must be regarded as waived when not specifically pointed out. It is hardly reasonable, upon the facts appearing in the record, to doubt that the order was in fact recorded. If the order was not recorded and the defect is one of substance and for that reason fatal, a reversal of the judgment, as erroneous on the grounds stated, cannot foreclose the defendant's rights. Under these circumstances we ought not—in the exercise of a discretion always to be used with caution—to decide or consider this question, which has not been argued and which

does not appear by the record to have been raised at the trial and to have been decided by the trial court.

There is error; the judgment of the Superior Court is reversed, and the cause remanded for further proceedings according to law.

In this opinion the other judges concurred.