THE STATE EX REL. CHARLES P. HOWARD vs. THE HARTFORD STREET RAILWAY COMPANY.

First Judicial District, Hartford, October Term, 1903.
TORRANCE, C. J., BALDWIN, HAMERSLEY, HALL and PRENTICE, Js.

Final judgment rendered upon the merits of an application for a peremptory writ of mandamus comes within the principle of *res judicata*, and is a bar to another application for the same writ by the same party under the same circumstances.

The city of Hartford applied for such a writ to compel the defendant to remove a cross-over switch it had constructed at a point not authorized by the municipal council, and final judgment upon the merits was rendered in favor of the defendant. *Held* that such judgment was a bar to another application for the same writ by the relator, a citizen of Hartford, merely to enforce his rights as one of the public.

While a street-railway company which does not adhere in all particulars to the plan for the construction of its line adopted by the local municipal authorities, may, at their instance, be required to conform thereto (§ 3824), it does not necessarily follow that its disobedience in a mere matter of detail—in this instance the location of a cross-over switch some distance from the place indicated on the plan—is, for that sole reason, a public nuisance abatable by an adjoining proprietor who suffers special annoyance therefrom. If such an-

State ex rel. Howard *v.* Hartford Street Ry. Co.

noyance is in its nature a necessary incident to the use of the high-way for public travel, the street-railway company is not liable, al-though the annoyance happens to fall with greater stress upon such proprietor on account of his proximity to the switch. It is the nature of the annoyance, and not the disobedience of the street-railway company, which determines its liability to those who happen to suffer most from the annoyance.

If, owing to physical or other conditions existing at that point, the annoyance caused to the adjoining proprietor is so peculiar and exceptional, and so injurious to the quiet enjoyment of his home, as to constitute an invasion of his property rights, he may then be entitled to equitable relief, but not to a writ of mandamus. Such private right could not be enforced, however, without establishing the absolute illegality of the structure at the point in question.

Argued October 7th—decided December 18th, 1903.

APPLICATION for a writ of mandamus requiring the defendant to remove a cross-over switch, brought to and tried by the Superior Court in Hartford County, *Roraback, J.,* after motions to quash the application and alternative writ, as well as a demurrer to the return and one to the reply, had been overruled (*Thayer, J.*); facts found and judgment rendered for the defendant, from which the relator appealed. *No error.*

*Edward B. Bennett,* for the appellant (relator).

*Lucius F. Robinson,* with whom were *John T. Robinson* and *M. Toscan Bennett,* for the appellee (defendant).

HAMERSLEY, J. The relator claims a right to pursue this writ of mandamus on two distinct grounds: first, by reason of his interest as a citizen of Hartford in the enforcement of the legal duty the defendant owes specially to that portion of the public represented by the city of Hartford; second, by reason of his interest as a stranger suffering special damage from the defendant's failure to perform the corporate duty alleged.

The defendant in its return alleged a former judgment of the Superior Court denying a peremptory writ to enforce the precise, specific duty the relator now seeks to enforce. The

return in connection with the reply also put in issue certain material facts.    Upon the trial below the defendant claimed that the former judgment constituted a bar to the relator's right to pursue this writ on the first ground, and that upon the facts admitted and found by the court the relator could not maintain the action upon the second ground.    The trial court supported these claims of the defendant, and if this action is correct the judgment denying the peremptory writ must stand.

The history of this case and the material facts as shown by the record before us may be briefly stated thus : The defendant was authorized by the legislature to construct and operate a double-track electric railway through Farmington Avenue in connection with a system of street railways authorized in the city of Hartford.    In 1899 the defendant presented to the mayor and common council of the city of Hartford a plan showing the location and mode of constructing and operating the double-track railway it was authorized to construct in Farmington Avenue.    This plan, as modified by the addition of certain conditions to be performed by the defendant, was adopted.    The statute (Public Acts of 1893, Chap. 169, §§ 2, 3) forbade the defendant to depart from this plan in constructing its railway, and gave to the city council control over the placing of the tracks in accordance with the plan, and power to order the removal of tracks not so placed, and authorized the enforcement of such order by writ of mandamus.    *Hartford* v. *Hartford Street Ry. Co.*, 73 Conn. 327, 336.    The plan thus adopted prescribed the precise portion of the highway to be occupied by the railroad structure, and provided that this structure should be built with four crossover switches, so-called, connecting the two tracks, so that in case of necessity a car on one track might be transferred to the other track.    This mode of constructing a double-track railroad is necessary to the safest operation of the road and to the most efficient service of public convenience.    The site where each crossover was to be placed was designated by the plan.

The defendant constructed its railroad in accordance with

the plan, except that one cross-over switch was built 950 feet east of Sigourney Street and in front of No. 116 Farmington Avenue, instead of 420 feet east of Sigourney Street, as required by the plan. The city council, in accordance with the provisions of the statute, ordered the defendant to remove this switch, and applied for a peremptory writ of mandamus commanding the defendant to obey this order. The mandate prayed for is thus stated in the alternative writ: " It is hereby required and enjoined of you, the said Hartford Street Railway Company, that before the first Tuesday of May, 1900, you remove said cross-over located on Farmington Avenue in front of No. 116, as required by the said order of the mayor and court of common council of said city of Hartford, and in all respects to obey said order and conform to the laws of this State in regard thereto." With the exception of the date of performance this is the same mandate asked for in the case now before us.

The defendant moved to quash the alternative writ, and upon this motion being granted by the Superior Court the city of Hartford appealed to this court.

We held that this difference in the location of the switch was enough to prevent the defendant from claiming a construction in substantial accordance with the plan, as against an order of the council enforcing its power of control; that mandamus would lie on application of the city to compel obedience to this order; and that the facts showing the legal duty of the defendant to obey the order were sufficiently alleged; and thereupon we reversed the judgment rendered on the motion to quash, and remanded the cause for further proceedings in the Superior Court. *Hartford* v. *Hartford Street Ry. Co.*, 73 Conn. 327.

The defendant then made return, and the case was tried upon issues of fact. The trial court found the issues of fact in favor of the defendant, and further found that in view of all the facts a writ of peremptory mandamus, even if legally permissible, ought not to issue, and for this reason dismissed the alternative writ.

Upon appeal by the city from this judgment, we held that

in refusing to issue a peremptory writ the court did not pass the limits of its legal discretion, and that its action was not reviewable. In this connection we said: " The writ of peremptory mandamus is an extraordinary remedy. Like other extraordinary remedies it can be applied only under exceptional conditions, and must to a certain extent be subject to judicial discretion. *Daly* v. *Dimock*, 55 Conn. 579, 590; *Chesbro* v. *Babcock*, 59 id. 213, 217. It appears from the finding, that the duty imposed upon the defendant by law depends upon a construction of the language used in the vote of the court of common council approving the location, which cannot be said to be free from doubt until authoritatively established; that the interest of the city in the removal of the track in question, whether pertaining to it as a private corporation or as representative of public interest (except its vital interest in the prompt obedience of this defendant corporation to its lawful orders), was not substantial. On the contrary, it appeared that the track in its present position served rather than injured the public interests ; that the track was placed by the defendant in pursuance of the direction and approval of the city officials charged by law with the execution of the orders of the council in respect to highways, in the well-grounded belief that as thus placed it complied with the directions of the court of common council. Such conditions do not necessarily exclude discretion. Certainly, extreme caution should be used in denying a writ which the court may lawfully issue, but we cannot say that in this case there has been such a plain misconception of sound discretion as would render the judgment erroneous. Some of the other errors assigned invite question. Apparently full effect was not given to the scope of our former decision ; but the errors are not material in view of the ground on which the judgment stands." *Hartford* v. *Hartford Street Ry. Co.*, 74 Conn. 194, 196.

The real parties to this former action were the city of Hartford—a territorial municipal corporation acting specially in behalf of that portion of the public composed of its inhabitants—and the present defendant. The cause of action tried

and determined involved the right of this portion of the public to a peremptory writ of mandamus compelling the defendant to obey the order of the city council. The court has adjudged that such right does not exist. Whether this conclusion is reached because it has found that no duty of obedience has been violated, or because it has found that such enforcement of a nominal duty would work injustice to the defendant without benefit to the public and would therefore be inequitable, it is a final adjudication of the real cause of action upon its merits. No question of a possible right upon a change of circumstances, to again apply for a writ orginally denied because its issue would be inequitable, is involved in this case. An adjudication of an application for a peremptory writ of mandamus upon its merits comes within the principle of *res judicata*, and is a bar to another application for the same writ by the same party. *Regina* v. *Pickles*, 3 Q. B. 599, note. In so far as each inhabitant of the city of Hartford was entitled to make the application made by the city, the relator, as such inhabitant, was a party to that application and is barred by the judgment therein. If the application be regarded as an ordinary action by the city in its corporate capacity, each inhabitant is by our law regarded as a party to the suit. *Beardsley* v. *Smith*, 16 Conn. 368, 380.

The application of the relator as a citizen of Hartford, in the present case, alleges substantially the same facts and asks for the same writ denied by the former judgment, and that judgment is a bar to this action.

Mandamus will never issue to enforce a private right. To justify its issue to compel a private corporation to do a particular act, it must appear that the act is in the nature of a corporate act specially commanded by law; and in general it will issue only at the instance of the public or of some person entitled to represent the public, including the individual in respect to whom the act commanded is to be done, or of some person who, though a stranger to the corporation and to the public interest, suffers an infraction of his private right at the hands of the corporation in doing the act forbidden or not doing the act commanded; and in this latter case

the mandamus compelling performance of the corporate duty should be an effective remedy for the infraction of the private right, and must be the only full and adequate remedy for that infraction. *American Asylum* v. *Phœnix Bank*, 4 Conn. 172, 178; *Tobey* v. *Hakes*, 54 id. 274, 275.

The second ground on which the relator claims the right to pursue this writ involves the application of these general principles to the facts alleged by the relator and found by the court. The grievance of Mr. Howard (the relator) against the defendant, for which he claims a right of legal redress, is this : Mr. Howard occupies No. 116 Farmington Avenue as the home of himself and family. The defendant's railroad tracks placed on Farmington Avenue in front of his residence are constructed with a cross-over switch, and, by reason of the proximity of his home to the railroad tracks thus constructed, the noise and vibration caused by the defendant in running its cars over these tracks is an annoyance to said Howard, causes great discomfort to him and his family, and greatly disturbs and interferes with the comfort and quiet enjoyment of his home. Assuming that the annoyance thus suffered by Mr. Howard is one for which the defendant is legally liable to him, we do not think that it furnishes—in connection with the other facts found—legal reason for the issue at the instance of Mr. Howard of the peremptory writ of mandamus he asks for in his application.

The relator's argument in support of his contention is based mainly, if not wholly, upon the assumption that inasmuch as the construction of the railroad tracks with four cross-over switches, authorized by the legislature and approved by the city council, differed in detail of execution from the plan approved by the council, in that one cross-over switch connected the two tracks at a point 500 feet distant from that indicated on the plan, that particular switch was, when placed on the street, and has ever since remained, a public nuisance in the sense of being an unlawful obstruction or encroachment upon the highway. The relator's argument is, that the switch being a public nuisance of this kind, the annoyance suffered by him is a special damage caused by the

nuisance, entitling him to its abatement, and therefore he has a legal right to demand the issue of a writ of mandamus commanding the defendant to obey the order of the city council.

Whether this argument is sound or not, we think the assumption on which it is based is incorrect. It may be that a railroad structure of this kind placed in the highway is an unlawful obstruction unless its location and mode of construction is submitted to and approved by the council, and it may be that after such approval a road can be located and constructed in such utter disregard of the plan approved as to be in effect a road built without submission or approval. But it cannot be that a railroad authorized by the legislature, approved in its location and mode of construction by the council, and built in substantial accord with that approval, is a public nuisance merely because in some detail of construction there is a departure from the plan approved. And it cannot be that a particular part of the structure so built, which differs in detail from the mode of construction indicated by the plan, is for that reason only a public nuisance, although the difference may be sufficient to justify the council in ordering the part to be removed and the construction made to conform to the plan. For instance, in the plan before us the railroad ties are required to be of oak or chestnut wood and the steel rails to be of a specific weight. Can it be that any tie of a different wood, or any rail of a different weight, is for that reason only an unlawful obstruction on a highway, and so for that reason a public nuisance? Such effect cannot reasonably be given to the legislation regulating the novel and peculiar situation arising from the relation of the defendant corporation and the city to each other and the highways. That legislation recognizes a railroad structure as a part of the highway furthering the identical public use of common travel for which the highway was established, unless authorized for a different purpose, or constructed and operated so as to be perverted to a different purpose and to invade property rights without compensation. *Canastota Knife Co.* v. *Newington Tramway Co.*, 69 Conn. 146, 154; *New York, N. H. & H. R. Co.* v. *Fair Haven & W. R. Co.*, 70 id. 610, 615.

It provides for the construction and maintenance of highways, thus combining facilities for travel in vehicles requiring a tramway for their use and in those which do not, by two agents of the State, viz., the municipality and the railroad corporation, and regulates their relations to each other and to the highway. Before commencing the construction of the tramway, they must come to an agreement as to the mode of construction and any conditions of assent to the particular plan involving obligations on the part of the railroad company such as the municipality may properly require. In directing construction in accordance with the plan thus agreed upon and adopted, the municipality is the superior and the railroad company is the subordinate; and the legislation provides modes of enforcing obedience to the lawful orders of the superior; but it does not, as by legislative mandate, command the parties to follow the precise mode of construction indicated in the plan. On the contrary, the whole discretion as to mode of construction, whether in adopting a plan or in executing one adopted, is vested in the parties. In making the discretion of the railroad subject to that of the city, and providing efficient means whereby the latter can enforce obedience, the law makes full provision for any departure from the plan, in detail of construction, by the railroad without assent of the city, but does not directly or impliedly declare that, by the mere fact of such departure, the tramway or any part of it ceases to be a constituent part of the highway, facilitating its use for public travel, and becomes a mere lawless obstruction to that travel. If the railroad company in some detail of construction departs from the plan adopted, the city has the power to compel conformity, but is not necessarily bound to do so. It is within its discretion to ratify the variation by a formal change of the plan in the manner provided, if not by informal acquiescence; and even when the council has issued an order of conformity, the city is not necessarily bound to enforce that order, either by writ of mandamus as authorized by the statute, or by itself doing the work at the expense of the company. It is still within its discretion to ratify the change.

It may be doubtful whether the duty resting on the railroad company, of exact conformity with the plan in detail of construction, is a corporate duty that can be enforced by mandamus except at the instance of the city, as specially authorized by statute. There certainly is an apparent distinction between the duty thus subject to the discretion of the city, and that absolute corporate duty created by legislative command, to do or not to do a specific thing. It is not, however, necessary to the determination of the present case to solve that doubt, and we leave the question an open one.

The annoyance of which the relator complains is that caused by public travel in a public highway. The highway is lawfully constructed with a double-track railroad for the accommodation of that travel. The railroad is constructed with cross-over switches found to be a reasonable construction for the safety and convenience of that travel. The aggravation of noise and vibration, when this travel passes over a cross-over switch, is the precise annoyance which the relator alleges as entitling him to legal redress against the defendant. It is found, and it is obvious, that such annoyance is incident to the public use of the highway, and the defendant, either as a private corporation or as agent of the State in maintaining the highway fit for that use, is not liable to the person so annoyed. It further appears that the annoyance from travel passing over a cross-over switch is felt most keenly by those living in close proximity to the switch, and that if the defendant obeys an outstanding order of the city council the relator will for the time being be relieved from the stress of the annoyance.

The defendant is not liable for an annoyance of this kind, because such annoyance is an incident to the use of the highway for public travel, and is not made liable because, through its disobedience of the council's orders, it happens to fall with greater stress upon the relator than upon his neighbors. It is the nature of the annoyance as a necessary incident to the public use of the street, and not the defendant's obedience to the council's order, which determines its

liability to those who happen to suffer most by the annoyance.

The relator seems to claim that the annoyance suffered by him is not merely an ordinary incident to the use by the public of a highway constructed with a double-track tramway and a cross-over switch, but that owing to physical or other conditions existing at this particular place it is peculiar and exceptional, and so injurious to his right to the quiet enjoyment of his home that the legislature in authorizing a street railway cannot be held to have authorized its construction in such manner at this place, or that the legislature itself cannot authorize such an invasion of his rights of property without compensation.

If this claim is well founded the relator has a grievance against the defendant and is entitled to legal redress; but such right does not entitle him to a writ of mandamus commanding the railroad to obey the order of the city council. His private right cannot be enforced without establishing the absolute illegality of such construction of the highway at this point, whether built with or without the joint action of the defendant and the city council; this question is not involved in an application for the writ; that is based upon the defendant's failure, in thus constructing the road, to conform with the agreement between itself and the city, adopted for defining the mode of construction.

If it appears that the defendant has conformed to the agreement, notwithstanding the construction invades the clear legal right of the relator, the writ asked for cannot issue.

Moreover, if, pending the application, the city council sees fit to exercise its power and discretion by rescinding the order, the writ cannot issue. There is, then, nothing upon which it can operate, although the invasion of the plaintiff's rights remains unchanged.

An ordinary action in equity will, however, furnish a complete remedy for testing the existence of such a wrong to the relator and giving the relator full and adequate redress; this of itself is a conclusive answer to any application for the extraordinary remedy by writ of mandamus.

These considerations go to the root of the relator's right; the law is so that neither upon the facts found by the trial court, nor upon any state of facts claimed or suggested by counsel, can this writ of mandamus be issued at the instance of the relator. It is therefore needless to consider other errors assigned.

There is no error in the judgment of the Superior Court.

In this opinion the other judges concurred.