THE STATE OF CONNECTICUT EX REL. THE CITY OF WATER-
BURY *vs.* THE NEW YORK, NEW HAVEN AND HARTFORD
RAILROAD COMPANY.

Third Judicial District, New Haven, January Term, 1909.

BALDWIN, C. J., HALL, PRENTICE, THAYER and RORABACK, Js.

The right to locate a railroad is a power of election, which, once ex-
ercised, is exhausted, in the absence of a statute to the contrary.

A street-railway company is not bound to build an extension of one of
its lines merely because a plan therefor submitted by it to the
municipal authorities has been approved, with certain proper
modifications, by the latter; but if it sees fit to build at all it has
no right to stop when it has finished a part of the extension and to
operate its cars on that part, but is bound to go on and carry out
the plan in its entirety as it was presented and authorized by the
city; it cannot accept the benefits of a conditional location and at
the same time escape the burdens incident to a full completion
of its obligation.

As a condition of their approval of the plan submitted, municipal au-
thorities have the power, under General Statutes, §§ 3823, 3824,
to make modifications in the grade proposed for the railway tracks,
and may require the railway company to widen and grade the
highway, upon which they are to be laid, to the full width of its
layout, making it safe for public travel, and may also fix a reason-
able time within which the work shall be completed and the rail-
way placed in operation. Such conditions are germane to the
plan of location and may properly be imposed in the public in-
terest.

A right granted by the legislature to a street-railway company to locate
its tracks in certain specified streets within a stated time which has
not yet expired, is not an absolute right, but one which is qualified
by the powers accorded by the same authority to municipal bodies,
in subordination to whose legitimate orders it is to be exercised.

A street-railway company which succeeds to the rights, franchises and
obligations of another, stands in the shoes of the latter with re-
spect to its duty to complete and operate a railway extension be-
gun by the former under a plan approved by the municipal au-
thorities.

The failure of the original company to complete the extension within
the time limited by the city, affords no excuse to its successor for
not subsequently proceeding to complete it.

A motion to quash an alternative writ of mandamus serves the purpose

of a general demurrer, and cannot be supported by allegations of fact.

An alternative writ of mandamus, alleging that the respondent refused to complete the work in question, is not open to a motion to quash upon the ground that it. fails to allege a request or demand upon the respondent to perform the work.

A proceeding in the name of the State, at the relation of a municipality, to compel a street-railway company to complete the extension of one of its lines, is one in which the State, as the party plaintiff, is seeking to enforce its laws.

The respondent claimed that in 1905 the General Assembly had validated and confirmed the location and construction of its extension. *Held* that this was immaterial, since the present action did not challenge the company's right to hold, maintain and operate so much of the extension as was then built, but simply sought to secure its completion as originally proposed and approved.

A delay of three years in bringing an application for a writ of mandamus to compel a street-railway company to complete an extension of one of its lines, if available at all as a defense as against the State, does not call for any explanation on the face of the writ.

A proceeding to enforce such a duty may be instituted in the name of the city whose orders have not been obeyed, or in the name of the State, either alone or on the relation of the city.

The obligation of the street-railway company to obey orders which a city is empowered by the State to issue respecting such company is an obligation imposed by law.

Where any of the grounds on which a pleading is adjudged insufficient are well taken, there is no error.

No one can profit by his own wrong.

Argued January 21st—decided February 16th, 1909.

APPLICATION by the State's Attorney, to the Superior Court in New Haven County, for a writ of mandamus. An alternative writ having been issued, it was quashed (*Bennett, J.*) on motion of the defendant. *Error and cause remanded.*

The writ stated this case: In 1904 the Connecticut Railway and Lighting Company presented a petition to the mayor and board of aldermen of the city of Waterbury, for the approval of its plan for the location of certain proposed alterations and extensions of its electric railway within said city, described as follows:—

"EXTENSION FROM EAST MAIN STREET TO THE PEARL LAKE
ROAD.

"Commencing at a point in the center of the East Main
Street track at the junction of East Main and Cole streets;
thence through Cole Street to Franklin Street; thence
through Franklin Street to Union Street; thence through
Union Street to Baldwin Street; thence through Baldwin
Street to Baldwin Hill or Piedmont Street; thence through
Chapel Street to the Pearl Lake Road."

It was duly referred to the board of public works, which,
after a public hearing, reported its recommendation that the
approval desired should be granted upon certain condi-
tions; and thereupon it was so granted by the board of
aldermen with the approval of the mayor, in March, 1904.

These conditions were as follows: 1. That the location of
the tracks from Cole Street through Franklin Street to
Union Street, adjoin the west line of Union Square, so-
called. 2. That said company shall repair and strengthen
the bridge over Mad River, known as 'Scovill's bridge, so
that it shall be safe under the changed conditions, and
shall thereafter bear a reasonable proportion of the cost of
keeping and maintaining said bridge in safe condition; and
also, whenever, in the opinion of the board of aldermen,
public necessity and convenience require the reconstruc-
tion or widening of said bridge, or the removal of said
bridge and the construction of a new, wider and stronger
bridge, of such dimensions and materials as said board
shall determine, the said Connecticut Railway and Light-
ing Company shall pay to the city of Waterbury a reason-
able proportion of the total cost of such changes in said
bridge, or of such new bridge, and shall thereafter bear a
reasonable proportion of the cost of maintaining such new
or reconstructed bridge in safe condition. 3. That all new
or additional poles to be erected and used for the support
of the wires for the operation of the cars of said company
along said road shall be of wood, of neat design, and sub-

ject to the approval of the board of commissioners of public works. 4. From Baldwin Hill Street to the terminus of the said railroad, said company shall widen the highway upon which its tracks are to be laid to the full width as laid out by the town of Waterbury, bringing all of said highway to the now-existing grade, and leaving its surface, for its full width, in good condition for public travel, it being understood that in the execution of such work said railroad company shall not be held liable for land damages to the adjoining proprietors. 5. That said company shall lay and maintain a cobble pavement between the rails and two feet on each side throughout the whole length of the line as described in this extension. 6. That all work to be performed under these conditions shall be done and completed by said company on or before the 15th day of November, 1904, and said company shall have said extension in operation and open to the use of the public on or before said date.

No appeal was taken by the company, but it thereupon proceeded to construct its tracks on a portion of the highways named in its petition, and to operate its cars thereon. It has ever refused and neglected to complete the work by extending its tracks through Chapel Street to the Pearl Lake Road. The defendant, in 1907, succeeded, as its lessee, to its rights, franchises, and obligations with respect to its electric railway system; but has, in like manner, ever neglected and refused to complete the work, by making and operating such extension.

The writ commanded the defendant, before the first day of February, 1908, to extend its tracks through Chapel Street to the Pearl Lake Road and operate its cars thereon, conformably to said conditions, or to show cause to the contrary.

The motion to quash asserted, among other things, that the mayor and board of aldermen had no jurisdiction or power to require the Connecticut Railway and Lighting

Company to construct its railway upon Chapel Street, or upon any street or streets, whether as a condition of their approval of a plan for the construction of its railway upon highways within said city, or otherwise; and it was upon this ground—the second of those stated in the motion—that, according to the memorandum of decision, the writ was quashed.

As successor to the Waterbury Traction Company the Connecticut Railway and Lighting Company had a franchise from the State "to locate and construct a railway upon the route or routes hereinafter set forth, . . . to wit: . . . From the South Main street terminus of the present tramway along the Waterbury road, so-called, to Grove Cemetery in the town of Naugatuck, Platt's Mill road, Pearl Lake road, Chapel street, Baldwin Hill street, Baldwin street, Mill street, Union street, Franklin street, Cole street." 11 Special Laws, p. 724, § 1; 13 id. p. 754, § 4; 15 id. p. 573, § 2. The time for constructing a railway on this route has been extended from time to time, and now runs to July 1st, 1909. General Statutes, § 3835; 12 Special Laws, p. 1016; 14 id. pp. 120, 704; 15 id. p. 574, § 3.

*John P. Kellogg,* for the appellant (plaintiff).

*Benjamin I. Spock,* for the appellee (defendant).

BALDWIN, C. J. The Connecticut Railway and Lighting Company, the predecessor in title of the defendant, having a franchise from the State for the construction and operation of a railway in certain streets in the city of Waterbury, submitted to the city authorities a plan for exercising this franchise with respect to some of these streets, pursuant to General Statutes, § 3823. This provided that before any such company should proceed to construct a railway or lay new tracks, it should "cause a plan to be made showing the highway or highways in and through

which it proposes to lay its tracks, the location of the same as to grade and the center line of said highways, and such changes, if any, as are proposed to be made in any highway," and that "said plan shall be presented to the mayor and court of common council of each city . . . within which such company proposes to operate its railway, who shall thereupon, after public notice, proceed to a hearing of all parties interested therein, and after such hearing may accept and adopt such plan, or make such modifications therein as to them shall seem proper, and shall, within sixty days after the presentation of such plan, notify such company in writing of their decision thereon and of such modifications therein as they have made"; and that "no such company shall construct such railway or lay additional tracks, except in accordance with a plan approved by the authorities aforesaid, or approved on appeal, by the railroad commissioners or the superior court, as provided in §§ 3832, 3833, and 3834."

The plan presented was an entirety. It was denominated a plan for an "Extension from East Main Street to the Pearl Lake Road." The proposed location started in East Main Street, and was to end at the Pearl Lake Road, reaching the latter by way of Chapel Street.

The approval of the plan was an approval of it in its entirety. Such an approval, either by the city authorities or given upon an appeal from their action, was a condition precedent to the location of such an extension. *Central Ry. & Elec. Co.'s Appeal*, 67 Conn. 197, 210, 35 Atl. 32.

The right to make a location of a railway or of any part of it is a power of election, and when once exercised is exhausted, in the absence of a statute to the contrary. *Hartford & C. W. R. Co.* v. *Wagner*, 73 Conn. 506, 509, 48 Atl. 218. The location by the Connecticut Railway and Lighting Company of its extension from East Main Street to the Pearl Lake Road has been made. It has been made and approved as a whole. The company did not thereby come

under an obligation to enter upon the construction of the piece of road thus located. But it did come under an obligation, if it should enter upon the construction of that piece, not to stop when it had constructed part of it, and proceed to operate cars upon that part, without going forward further, within a reasonable time, to complete the extension.

The city authorities had power to modify the plan submitted as a condition of their approval, in any way legitimately affecting one or more of the particulars which the statute required such plans to specify. One of these particulars was the grade proposed for the tracks: another was the change, if any, to be made in any highway. The city authorities were of opinion that changes were proposed in the plan with respect to that part of the route running from Baldwin Hill to the terminus of the extension, which required modification. Their approval was therefore conditioned on the company's bringing the street, in that part of the extension, throughout its full width, to a specified grade, and putting it, both within and outside of the railway tracks, in good condition for public travel. Another condition required this and certain other work to be completed, and the whole extension to be put in operation, by November 15th, 1904.

These conditions were strictly modal. They related to the manner of proceeding. The first guarded the public against irregular grades and too narrow a roadway: the second guarded the public against unnecessary delays in the performance of the work, and insured their receiving the full benefit of the entire extension, if any part of it were constructed and used. Both were germane to the plan of location. *Central Ry. & Elec. Co.'s Appeal*, 67 Conn. 197, 214, 219, 35 Atl. 32; *Waterbury's Appeal*, 78 Conn. 222, 225, 61 Atl. 547.

It is argued that, since the State had given the company a right to locate its railway in the streets in question

within a period which would not have elapsed on November 15th, 1904, this time could not be shortened by the city. This right of location, however, was given subject to the approval and control in certain particulars of the city authorities. It was a qualified, not an absolute right. The company could not begin the laying of a track by digging up the pavement in a busy thoroughfare and leave things in such a shape for months or years. It must act reasonably in the exercise of its franchise, and the General Assembly left it with the municipal authorities, in the first instance, to see that it should so act. The order of approval now in question was in effect a declaration by proper agents of the law that the public interest required that the particular extension contemplated should, if undertaken, be carried to completion during the current season.

It follows that the specific ground on which the memorandum of decision indicates that the writ was quashed was insufficient. Part of the extension approved having been constructed and put in operation, by the Connecticut Railway and Lighting Company, it came under an obligation, so far as appears from the writ, to build the rest of it, and put that in operation; conforming, as respects so much of the route as runs from Baldwin Hill Street to the terminus at Pearl Lake Road, to the condition imposed by the city in that regard.

If the entire extension had been so completed and put in operation, it is certain that no part of it could have been subsequently abandoned, at the will of the company. *State* v. *Hartford & N. H. R. Co.*, 29 Conn. 538, 547. The reasons for this apply conversely. The benefits and the burdens coming from the conditional approval of the location go together. It was not within the company's power to accept and take advantage of what it deemed beneficial, and yet escape the burdens incident to a full completion of the extension in the manner authorized.

It appears from the judgment-file that the Superior

Court found all the issues for the defendant, and adjudged the writ insufficient. If, therefore, any of the grounds assigned for quashing it were valid, there was no error.

The first ground was that the defendant was no party to the proceedings had in 1904. This is immaterial, since its succession to the rights, franchises, and obligations of the Connecticut Railway and Lighting Company came at a later date.

The third, fourth, and fifth grounds were that the condition requiring the completion of the extension by November 15th, 1904, merely limited the time within which the Connecticut Railway and Lighting Company could have constructed it; and that, this time having expired, the defendant had no right to complete the construction, and could not be commanded to complete it.

The Connecticut Railway and Lighting Company could not have set up, as against the State, that it had not completed the extension by November 15th, 1904, as an excuse for not subsequently proceeding to complete it. No one can profit by his own wrong. The writ alleges that all its rights, duties, and obligations passed to the defendant in 1907. The latter stands, therefore, as to this matter, in the shoes of its lessor.

The sixth ground is that "no request or demand has ever been made of the respondent to complete the construction of said line." A motion to quash serves the purposes of a general demurrer, and cannot be supported by allegations of fact. But if the averment is to be construed as importing that the writ shows no request or demand, a sufficient answer is that it directly alleges a refusal to complete the work, which is enough, so far as such a motion is concerned. *Brainard* v. *Staub*, 61 Conn. 570, 575, 24 Atl. 1040.

The seventh ground is that the laws of the State and not the mayor and aldermen of Waterbury control the use by the public of the defendant's street railway, and the in-

terest of the public in its operation. This claim has been already discussed in connection with the second of the grounds set up in the motion; but it may be added that the writ is entitled the "State of Connecticut *ex rel.* The City of Waterbury *v.* The New York, New Haven & Hartford Railroad Company," and is a proceeding in which the State, as the party plaintiff, is seeking to enforce its laws.

The eighth ground assigned is that the General Assembly, in 1905, validated and confirmed the location and construction of the railway, as located and constructed in the highways described in the original petition to the city authorities, "through Baldwin street to its intersection with Chapel street at Baldwin Hill or Piedmont street." In an amendment of its charter in the year named (14 Special Laws, p. 704), it is provided that "the location and construction of all tracks, switches, cross-overs, fixtures, poles, wires, and appurtenances heretofore located and constructed by said company, or any of its underlying or constituent companies, now controlled and operated by said company, are hereby validated and confirmed as at present existing for the use, benefit, and enjoyment of said company; and it is also authorized to carry persons, goods, and property over any or all of its lines of railway, any charter provision to the contrary notwithstanding."

The State, in this action, is not challenging the right of the defendant, as lessee of the Connecticut Railway and Lighting Company, to hold, maintain, and operate so much of the railway route from East Main Street to Pearl Lake Road as was located and constructed in 1905. Its complaint is that, whereas part of that route has been constructed and is being operated, that part running through Chapel Street to the Pearl Lake Road has not been. This assumes that what has been done is lawful so far as it goes, and simply insists that a franchise to lay a railway on a certain route, which has been in part executed, shall be wholly executed.

The ninth ground is laches. The defendant did not acquire title until a day not specified in 1907. The application for the writ of mandamus was made January 17th, 1908. There is clearly no laches apparent as respects the defendant, unless it can rely on a delay to proceed against its predecessor in title. But if so, and if laches is ever available in defense to such an action by the State, a delay of three years in bringing before the courts a controversy of this nature called for no explanation, in the first instance, on the face of the writ.

It follows that the motion to quash was wholly without merit.

In the argument in this court, the defendant has set up a claim, not made in the motion to quash, that mandamus does not lie to compel the performance by a private corporation of any particular act, unless it be a corporate act specially commanded by law. As this objection strikes at the foundation of the action, we think it proper to consider it.

General Statutes, § 3824 (see Public Acts of 1907, p. 806, Chap. 219), provides that the mayor and common council of each city shall have, in the first instance, exclusive control over the placing of street-railway tracks in the city streets, and of changes in grade of such railway, and, if any railway company shall fail to obey their orders in those respects, "may proceed by a writ of mandamus to compel such company, at its own expense, to carry out such orders." Such writs have been frequently issued. *Hartford* v. *Hartford Street Ry. Co.*, 73 Conn. 327, 47 Atl. 330; *State ex rel. Howard* v. *Hartford Street Ry. Co.*, 76 Conn. 174, 56 Atl. 506. The procedure may be by a writ in the name of the city. There is no reason why it may not also be by a writ in the name of the State on the relation of the city, or in the name of the State alone.

The State can always proceed in such an action to enforce a legal duty created by an authority to which it has

entrusted the power to create it. When it invested the city of Waterbury with power to make orders of the kind now in question, it charged those against whom such orders might be directed with the duty of obeying them. Their obligation was therefore one imposed by law. *Basset* v. *Atwater*, 65 Conn. 355, 363–365, 32 Atl. 937.

There is error, the judgment is reversed and the cause remanded to be proceeded with according to law.

In this opinion the other judges concurred.