MILFORD EDUCATION ASSOCIATION *v.* BOARD OF EDUCATION OF THE TOWN OF MILFORD

HOUSE, C. J., SHAPIRO, LOISELLE, MACDONALD and BOGDANSKI, Js.

Argued November 8, 1974—decision released January 21, 1975

*Stephen E. Ronai,* with whom was *John A. Parese,* for the appellant (defendant).

*Martin A. Gould,* for the appellee (plaintiff).

HOUSE, C. J.  This action arises out of a contract dispute between the plaintiff, the Milford Education Association, and the defendant, the board of education of the city of Milford.  After a trial in the Superior Court, judgment was rendered for the plaintiff.  The defendant has appealed from that judgment.

The plaintiff is a duly certified association of professional employees and is the certified collective bargaining representative for a unit composed of approximately 670 classroom teachers of the public schools in the city of Milford.  The defendant board of education is the duly elected and con-

stituted board of education of that city. On October 6, 1970, the plaintiff and the defendant executed a contract pursuant to § 10-153d of the General Statutes, as amended, for the period from September, 1970, to August 31, 1971. As of September 1, 1971, the parties had not completed negotiations for a successor contract for the 1971-1972 school year and agreed that while the negotiations were going on they would operate under the 1970-1971 agreement.[1] On October 15, 1971, the parties entered into an identical agreement differing only in that it extended the 1970-1971 contract for the period from October 15, 1971, to October 22, 1971.

The current dispute arose over the parties' conflicting interpretations of the wording of the holdover agreements. The plaintiff claimed that the 1970-1971 contract provided that for each year of teaching experience a teacher would be advanced one step on the salary schedule and that, accordingly, while the parties were operating from September 1 to October 22, 1971, each teacher who had by September 1, 1971, completed another year of teaching experience would, under the terms of the 1970-1971 contract, be entitled to move up one step on the salary schedule. The defendant asserted, on the other hand, that the intention of the parties in entering into the holdover agreement

---

[1] "The Milford Education Association and the Milford Board of Education herewith agree that for the period September 1, 1971 to October 15, 1971 or to the date of the execution of a successor agreement, whichever is sooner, all salaries and other conditions of employment for teachers employed by the Milford Board of Education shall be identical to those set forth in a certain agreement titled, 'Agreement between the Milford Education Association and the Milford Board of Education covering the school year 1970-1971.' "

was that the salaries paid from September 1 to October 22, 1971, were to be the same as those paid during the previous school year under the 1970-1971 agreement with no increase as a result of the year of additional teaching experience. On December 7, 1971, the parties agreed to the terms of a new contract effective as of November 19, 1971. During the period from September 1, 1971, to November 18, 1971, each teacher did in fact receive the same salary as that received during the 1970-1971 school year.

The plaintiff did not bring an action for breach of contract or for a declaratory judgment but instead proceeded by way of a petition for a writ of mandamus. The only relief sought by the plaintiff's complaint was "a writ of mandamus ordering said Board of Education to make retroactive payments of salary to each of its teacher employees based upon the difference between the amount they were actually paid and the amount which they should have been paid had they been placed on the proper step on the 1970-1971 salary schedule for the period from September 1, 1971 to November 18, 1971." The defendant pleaded by way of special defense that the plaintiff had not alleged sufficient facts to warrant the relief sought in that the complaint did not allege facts sufficient to show (1) that the defendant had a ministerial duty to perform the acts requested, which duty was imposed by law and did not involve the exercise of discretion; (2) that the plaintiff had a complete and immediate right to the relief sought; and (3) that the plaintiff had no other remedy.

The court found the issues for the plaintiff and rendered judgment ordering that "the defendant

Board of Education of the Town of Milford advance each teacher one step and be paid in accord with the 1970-1971 salary schedule from September 1, 1971 to October 22, 1971."

On its appeal, the defendant, by its assignments of error, attacked the finding and the conclusions of the court on two principal bases. The first is predicated on the claim that the court erred in its interpretation of the contract and in its conclusion that the salary schedule, which was set forth in the 1970-1971 contract and which continued in effect during the extended periods, included the provision that each teacher should be advanced one step on the salary schedule after completion of a year of teaching experience. Its second principal claim is (1) that the court erred in concluding that the plaintiff had established that it was entitled to enforce its claim by way of the extraordinary relief of a writ of mandamus, and (2) that the relief as granted was illusory requiring further proceedings because there was no allocation made by the court as to the amount of damages to be recovered by the plaintiff and because no allocations were made as to the differing amounts to be paid to the various members of the plaintiff association.

We consider first the contention of the defendant that the court erred in concluding that the issuance of a writ of mandamus was an appropriate and proper remedy to grant in such a case as this where the cause of action set out in the complaint is basically one for breach of contract and the judgment of the court is for all intents and purposes an order that the defendant comply with a declaratory judgment predicated upon its interpretation of the terms of the contract.

There is merit to the contention of the defendant which was first pressed by demurrer and subsequently pleaded by way of special defense. "The writ of mandamus is an extraordinary remedy to be applied only under exceptional conditions, and is not to be extended beyond its well-established limits." *Lahiff* v. *St. Joseph's Total Abstinence Soc.,* 76 Conn. 648, 651, 57 A. 692. Mandamus neither gives nor defines rights which one does not already have. It commands the performance of a duty. It acts upon the request of one who has a complete and immediate legal right; it cannot and does not act upon a doubtful and contested right. It is an expeditious remedy to protect a clear legal right. *Boyko* v. *Weiss,* 147 Conn. 183, 186, 158 A.2d 253. "The essential conditions without which the writ will not be issued to enforce the performance of a ministerial duty are: (1) that the party against whom the writ is sought must be under an obligation imposed by law to perform some such duty, that is, a duty in respect to the performance of which he may not exercise any discretion; (2) that the party applying for the writ has a clear legal right to have the duty performed; and (3) that there is no other sufficient remedy." *Bassett* v. *Atwater,* 65 Conn. 355, 360, 32 A. 937; *Waterbury Teachers Assn.* v. *Furlong,* 162 Conn. 390, 294 A.2d 546; *Basney* v. *Sachs,* 132 Conn. 207, 43 A.2d 449; *State ex rel. Berger* v. *Hurley,* 73 Conn 536, 48 A. 215. The same principle is more succinctly stated in *State* v. *New Haven & Northampton Co.,* 45 Conn. 331, 343, as follows: "The writ of mandamus is designed to enforce a plain positive duty, upon the relation of one who has a clear legal right to have it performed, and where there is no other adequate legal remedy."

We have always recognized the extraordinary character of proceedings by mandamus; its use is justified only when necessary to supplement the deficiencies of ordinary legal processes. *Bassett* v. *Atwater,* supra. We have consistently held to this rule, oft repeated and emphasized, and have applied it in both its letter and spirit. All attempts to appropriate it to use as an ordinary civil action have been steadily discountenanced. *Chatfield Co.* v. *Reeves,* 87 Conn. 63, 86 A. 750. As a result, issuance of the writ has been confined to situations where the aggrieved party has no adequate remedy either at law or in equity. *State ex rel. Howard* v. *Hartford Street Ry. Co.,* 76 Conn. 174, 184, 56 A. 506.

Adequate remedy at law means a remedy vested in the complainant, to which he may at all times resort, at his own option, fully and freely, without let or hindrance. *Atwood* v. *Partree,* 56 Conn. 80, 83, 14 A. 85; *State ex rel. Heimov* v. *Thomson,* 131 Conn. 8, 37 A.2d 689; *Wheeler* v. *Bedford,* 54 Conn. 244, 249, 7 A. 22. Thus, we early held that mandamus will not lie where an action on the case will afford satisfaction equivalent to the specific relief claimed. *Asylum* v. *Phoenix Bank,* 4 Conn. 172, 178.

The general rule is that the writ is not available to recover a debt or damages arising out of a contract; *Bassett* v. *Atwater,* supra; nor to enforce a contract even though its performance necessarily devolves on a public official. *Parrotta* v. *Hederson,* 315 Mass. 416, 419, 53 N.E.2d 97; 52 Am. Jur. 2d, Mandamus, § 69; 55 C.J.S., Mandamus, § 56. The remedy in such cases is an action at law for breach of the contract. Mandamus is not the proper remedy to enforce performance of a contract for employment where the compensation, length of ser-

vice, and duties of the employee are not fixed by statute; 52 Am. Jur. 2d, Mandamus, § 69; other jurisdictions have held that mandamus will not issue to compel the payment of the salary of a public employee pursuant to his contract of employment; *Mootz* v. *Belyea,* 60 N.D. 741, 236 N.W. 358; *Board of Education* v. *State,* 35 Ohio App. 29, 171 N.E. 610; see also note, 5 A.L.R. 572; nor to enforce other duties resting on contract. See *Board of Education, H.S. Dist. No. 212* v. *Scottsdale Ed. Assn.,* 109 Ariz. 342, 509 P.2d 612, and cases cited therein.

In the present case the plaintiff was seeking basically a judicial interpretation of the terms of its contract with the defendant board of education and the payment of such sums as are due the individual teachers. That result could easily have been attained in a simple action for breach of contract or by an action for a declaratory judgment and consequential relief. Practice Book §§ 307–313; *New Haven Water Co.* v. *New Haven,* 131 Conn. 456, 464, 40 A.2d 763. The existence of such clear alternative and adequate remedies at law precludes the use of mandamus in such a case as this. In fact, it may be observed that either remedy would be more complete and adequate than mandamus because in such proceedings there would properly be a determination of the specific amounts due under the contract as interpreted by the court— a determination not made in the present case.

It is true that the nature of the writ of mandamus as an extraordinary remedy permits those seeking it to secure a preference in assignment for trial as a privileged case. Practice Book § 213, as amended. By the same token, the granting of such

preference is to the detriment of other litigants awaiting trial. We cannot permit a plaintiff to obtain a trial preference by a claim for an extraordinary remedy to which it is not entitled. We conclude that the court should not have granted the plaintiff's claim for a writ of mandamus.

Under most circumstances our decision that the court should not have granted the relief which it did would terminate our consideration of the appeal. Since, however, the trial court did try the basic issue involved in the case and its decision has been fully briefed and argued before us, we have, with considerable reluctance and without condoning the procedure followed in the trial court, decided in the interest of judicial efficiency to consider the merits of the court's decision on the principal issue raised on the appeal—that the extension agreements did provide that for the extended periods and based on the 1970-1971 salary schedule the teachers were to be paid their increments resulting from an additional year of teaching experience.

We have considered each of the defendant's briefed assignments of error addressed to the court's finding and conclude that the finding of fact is not subject to any material correction of benefit to the defendant.

The 1970-1971 contract, which was extended by the two agreements in question, provided in article V, with respect to "Salary Schedule": "See Appendix 'D'." That appendix set out a fourteen-step salary schedule based on years of teaching experience and educational attainment. The contract also provided in article X that "[a]ll teachers shall be placed on the appropriate step in the salary schedule in accordance with the following crite-

ria . . . ." The criteria enumerated consisted of (1) "degree status"; (2) "[f]ull credit for previous teaching in public, private and military dependency schools, provided that such experience shall have been continuous service for at least one-half of any school year"; and (3) credit for military service. As we have noted, the two extension agreements provided that during the extension period "all salaries and other conditions of employment for teachers employed by the Milford Board of Education shall be identical to those set forth" in the 1970-1971 contract.

" 'A contract is to be construed according to what may be assumed to have been the understanding and intention of the parties. *Downs* v. *National Casualty Co.*, 146 Conn. 490, 494, 152 A.2d 316; *Bridge-Mile Shoe Corporation* v. *Liggett Drug Co.*, 142 Conn. 313, 318, 113 A.2d 863. That intention is to be determined from the language used, interpreted in the light of the situation of the parties and the circumstances connected with the transaction. The question is not what intention existed in the minds of the parties but what intention is expressed in the language used. *Foley* v. *Foley*, 149 Conn. 469, 471, 181 A.2d 607; *Sturtevant* v. *Sturtevant*, 146 Conn. 644, 647, 153 A.2d 828.' *Ginsberg* v. *Mascia*, 149 Conn. 502, 505, 182 A.2d 4." *Bria* v. *St. Joseph's Hospital*, 153 Conn. 626, 630, 220 A.2d 29.

The provision with respect to compensation, contained in the 1970-1971 contract, that teachers should be advanced one step on the salary schedule for each additional year of teaching experience, was clearly a part of the salary agreement and conditions of employment contained in that contract

and by the express terms of the extension agreements those "identical" terms were to be effective during the extended periods. We find no error in the conclusion of the court in thus interpreting the provisions of the extension agreements and in concluding that the plaintiff did not waive the right to the increments by not objecting immediately in September, 1971, to the defendant's failure to pay them.

We thus find that there was no error in the court's determination of the issue as to the proper interpretation of the extension agreements but that there was error on the part of the court in granting the relief which it did by its judgment—which was the only relief sought by the plaintiff's complaint. Beyond that we cannot go, and the case must be remanded to the Superior Court for further proceedings. Whether that court, in the exercise of its discretion and in the light of present circumstances and our decision, should decide to permit the plaintiff to amend the claim for relief in its complaint and take evidence on the issue of damages or, in the alternative, to render judgment for the defendant since the only relief sought by the complaint as it stands cannot be granted, can properly be determined by the trial court after hearing.

There is error, the judgment is set aside and the case is remanded for further proceedings in accordance with this opinion.

In this opinion the other judges concurred.