CHAMBER OF COMMERCE OF GREATER WATERBURY, INC. *v.* EUGENE A. MURPHY, ASSESSOR OF THE CITY OF WATERBURY (LEO IORIO, SUBSTITUTED DEFENDANT)

(two cases)

COTTER, C. J., LOISELLE, BOGDANSKI, PETERS and HEALEY, Js.

Argued February 27—decided February 28, 1980

*Thomas K. McDonough,* with whom were *Anthony A. Casagrande* and *Carl R. Cicchetti,* for the appellant (defendant).

*Anthony M. Fitzgerald,* with whom was *John C. Bullock,* for the appellee (plaintiff).

COTTER, C. J. This court decided on February 28, 1980, that the conclusions of the trial court were legally correct and could not be disturbed. The following is the full opinion of this court.

The plaintiff, a property owner and taxpayer in the city of Waterbury, brought this action seeking a writ of mandamus requiring the defendant, the sole assessor for the city of Waterbury (hereinafter the city) to fulfill his statutory duty of revaluing real property every ten years, in accordance with General Statutes § 12-62,[1] by filing a revalued 1979 grand list on or before January 31, 1980. From the judgment of the trial court issuing the writ, the defendant has appealed.

The facts which support the trial court's judgment are unchallenged and are set out in its memo-

---

[1] "[General Statutes] Sec. 12-62. PERIODIC REVALUATION OF REAL ESTATE. Commencing October 1, 1978, the assessors of all towns, consolidated towns and cities and consolidated towns and boroughs shall, no later than ten years following the last preceding revaluation of all real property and every ten years thereafter, view all of the real estate of their respective municipalities, and shall revalue the same for assessment and, in the performance of these duties, except in any municipality where there is a single assessor, at least two of the assessors shall act together, and all valuations shall be separately approved by a majority of the assessors."

randum of decision. See Practice Book, 1978, § 3060B. Those facts that are relevant to an understanding of the issues on appeal reveal the following: The last revaluation of real property in the city was completed in 1965. On May 10, 1977, the city contracted with the firm of Trumble-McGuirk & Associates (hereinafter TMA), a firm with expertise in the revaluation of real property, to assist it in carrying out the revaluation of all real estate in the city for the grand list of October 1, 1979. The contract called for TMA to complete all valuations and to have the notices of increased assessments, as required by General Statutes § 12-55,[2] in envelopes

---

[2] "[General Statutes] Sec. 12-55. LISTS; NOTICE OF INCREASE; PUBLIC INSPECTION; ABSTRACTS. When the lists of any town have been so received or made by the assessors, they shall equalize the same, if necessary, and make any assessment omitted by mistake or required by law. The assessors may increase or decrease the valuation of property as named in any of such lists or in the last-preceding grand list, but, in each case of any increase in valuation of such property above the valuation, if any, stated by the person filing such list, if such person has so requested in writing at the time of filing such list, or in each case of any increase of valuation above the valuation of such property in the last-preceding grand list, they shall give written notice, in person or by mail, of such increase, to the person whose list or valuation is so changed. When such lists have been so completed, the assessors shall arrange such lists in alphabetical order and lodge the same, except as otherwise specially provided by law, in the town clerk's or assessors' office, on or before the thirty-first day of January, for public inspection. Such assessors shall make an abstract of such lists, including the ten per cent added thereto, shall take and subscribe the oath provided by law, which shall be certified by the officer administering the same and endorsed upon or attached to such abstract, and, except as otherwise specially provided by law, shall lodge such abstract in the town clerk's office, on or before the thirty-first day of January next after the date prescribed for the filing of such lists, for public inspection. Any assessor of any town who fails to comply with any provision of this section shall be fined five dollars. The assessors of cities and boroughs shall, at the expiration of their term of office, deposit with the clerks of their respective communities all tax lists filed with or made out by them, to be by such clerks kept on file."

for mailing to the owners by November 20, 1979. All work done by TMA was subject to the direct supervision and approval of the assessor of the city, and the completed appraisals, upon approval by the assessor, were to serve as a basis for the assessments on the grand list of October 1, 1979. TMA completed its work on schedule and notices of the new assessments were mailed on or about November 20, 1979.

The new assessments revealed a significant increase in the valuations placed on residential real estate and property owners in the city immediately decried their estimated tax bills which had accompanied the notice of new assessments. The mayor of the city at this point asked the then assessor Eugene A. Murphy to review the assessments, particularly those on commercial and industrial properties. After a review of these valuations, the defendant Murphy found various values that he felt required further review and on December 7, 1979, sent a list of these commercial and industrial properties to TMA with a request that TMA immediately review their valuations so that the defendant could complete the grand list on January 31, 1980. At the time the defendant assessor gave TMA the list of commercial and industrial properties to review, he had accepted the residential property valuations and intended to complete the revalued grand list by January 31, 1980.

On or about December 8, 1979, the defendant changed his intention to file a completed revaluation list on or before January 31, 1980. The defendant's change of mind was caused by an order from the city's mayor: (1) to review TMA's assessments with respect to all properties in the city; (2) to

leave incomplete the revaluation by January 31, 1980; (3) to continue to work on the revaluation for another year; and (4) to file the 1979 grand list based on the 1978 grand list. The plaintiff then instituted the present action on December 14, 1979, seeking a writ of mandamus to compel the city's assessor to implement a revalued grand list.

At trial on December 20, 1979, Murphy, at that time still the assessor for the city, testified that he had approved the residential valuations submitted by TMA and that he could complete his review of the commercial and industrial valuations so as to be able to file a complete revalued grand list if he were granted a one month extension until February 29, 1980, by the commissioner of revenue services as provided by General Statutes § 12-117.[3] Shortly after the trial court on December 27, 1979, adjudged that a writ of mandamus should issue, Murphy was dismissed and on January 3, 1980, Leo Iorio was hired to serve as the acting assessor of the city of Waterbury. Iorio was formally substituted as a defendant in this matter on January 8, 1980, and one day later he filed the present appeal. On Febru-

---

[3] "[General Statutes] Sec. 12-117. EXTENSION OF TIME FOR COMPLETION OF DUTIES OF ASSESSORS AND BOARD OF TAX REVIEW. The period prescribed by law for the completion of the duties of any assessor, board of assessors or board of tax review may, for due cause shown, be extended by the commissioner of revenue services for a period not exceeding one month, and in the case of the board of tax review in any town in the assessment year immediately following completion of a revaluation of all real property in such town and adjustment of the assessment list for such assessment year accordingly, such period may be extended by said commissioner for a period not exceeding two months, provided such assessor or board shall submit to said commissioner, not less than ten days before the expiration of the period prescribed by law, a request in writing, approved by the chief executive officer of the municipality, for such extension, setting forth the reasons therefor. If, in the opinion of the board of tax review and the chief executive officer, the number of

ary 20, 1980, this court determined that it was in the public interest that the appeal from the judgment of the Superior Court be heard prior to February 29, 1980, and granted the motion for an expedited appeal. On January 3, 1980, the commissioner of revenue services had granted the city an extension of time to February 29, 1980, to file a grand list. The appeal was heard on February 27, 1980.

I

It is settled law in this jurisdiction that a writ of mandamus may issue only when three conditions exist: (1) The law imposes a duty—the performance of which is mandatory and not discretionary—on the party against whom the writ is sought; (2) the party applying for the writ has a clear legal right to have the duty performed; (3) there is no other adequate remedy. *Light* v. *Board of Education,* 170 Conn. 35, 37-38, 364 A.2d 229; *Milford Education Assn.* v. *Board of Education,* 167 Conn. 513, 518, 356 A.2d 109; *Chatfield Co.* v. *Reeves,* 87 Conn. 63, 64, 86 A. 750; *State* v. *New Haven &*

---

appeals pending before such board is such as to preclude fair and equitable consideration of such appeals within the time restriction prescribed herein, the commissioner of revenue services may, upon the request in writing of the board of tax review approved by the chief executive officer, setting forth such opinion, authorize the assessors to assess all real estate according to the list in effect immediately prior to the list from which such appeals are taken, subject only to transfers of ownership, additions for new construction and reductions for demolitions. The list from which such appeals are taken shall then become the list for the assessment day next ensuing, subject only to such adjustments as are authorized by the board of tax review. If an extension is granted to any board of tax review, the time within which any taxpayer may appeal from the decision of such board and the time within which the town clerk shall transmit an abstract of the assessment lists shall be extended for a like period."

*Northhampton Co.,* 45 Conn. 331, 343. The defendant argues that in the present case each of the three necessary conditions is absent. We disagree.

## A

The contention that "the provisions of § 12-62 are not mandatory but discretionary" was made by a previous Waterbury assessor in *State ex rel. Eastern Color Printing Co.* v. *Jenks,* 150 Conn. 444, 450, 190 A.2d 591. This court noted that the statute contains the words "shall . . . view" and "shall revalue" and held that as far as these two operations were concerned the statute prescribed mandatory, ministerial acts that the assessor was obliged to carry out. Id., 450–51.

The distinction between ministerial and discretionary acts and the reasons why a writ of mandamus would be issued in the present context have long ago been delineated by this court in *State ex rel. Foote* v. *Bartholomew,* 103 Conn. 607, 615, 132 A. 30. " '[W]hile . . . one exercising discretion, or authority, may be compelled to act and to proceed to the performance of his duty, he cannot be controlled in his judgment or compelled to exercise his discretion in a particular manner by means of this writ [of mandamus]. . . . In other words, officers whose duty it is to value and assess property may be compelled by mandamus to proceed in the discharge of their duties and make an assessment, but the court would not undertake to give directions as to the valuation that ought to be placed upon the property to be assessed.' " (Citation omitted.) Id., 615. More recently we elaborated: "[M]andamus will lie even if the *exercise of the duty* involves discretion, so long as *existence of the duty* is ministerial, and provided that the order issued does no

more than require the duty to be performed, leaving the manner of its performance to the good-faith discretion of the official charged." (Emphasis added.) *State ex rel. Golembeske* v. *White,* 168 Conn. 278, 284, 362 A.2d 1354; see *State* v. *Erickson,* 104 Conn. 542, 545–46, 133 A. 683.

### B

The defendant seeks to avoid the effect of *State ex rel. Eastern Color Printing Co.* v. *Jenks,* supra, by arguing that §§ 12-62 and 12-55 compel the assessor only to commence a revaluation and that completion would constitute a discretionary act. This contention is also in effect a claim that the plaintiff does not have a clear legal right to have the revaluation completed on or before the extended date of February 29, 1980. The short answer to the defendant here is that the full determination of this court in *Jenks* was that "the failure of the defendant to make *and complete* another revaluation by February 1, 1960, constituted a disregard of the mandate of the statute." (Emphasis added.) Id., 447. Any other or a contrary determination by us would make the statutory requirement meaningless by permitting an assessor an unlimited period in which to file a revalued list. Section 12-55, which contains its own equally mandatory language (see footnote 2) only serves to reinforce the requirement in § 12-62 that revaluation be made and completed within the statutorily prescribed time.

It should be emphasized again that a direction to the defendant to comply with § 12-62 does not impose any restraints on the defendant's choice of the most appropriate manner of complying with the statute. So long as the existence of the duty is ministerial and provided that the order issued only

requires that the duty be performed and leaves the manner of its performance to the good-faith discretion of the official charged, then mandamus will lie. *State ex rel. Golembeske* v. *White,* supra. The defendant, by attempting to have us deem the exercise of the duty discretionary, would have us term its existence discretionary as well. This we cannot do.

## C

The defendant also contends that mandamus should not lie in the present case because the plaintiff had other adequate remedies available to him. The defendant again overlooks the import of the *Jenks* decision in the present case. In *Jenks,* the last time real property in the city of Waterbury was due for revaluation, this court found mandamus to be the appropriate remedy and stated that: " '[A]ny other relief, the existence of which will preclude the resort to the remedy by mandamus, must not only be adequate, but it must be specific, that is, . . . adapted to secure the desired result effectively, conveniently, completely and directly upon the very subject matter involved.' " *State ex rel. Eastern Color Printing Co.* v. *Jenks,* supra, 451, quoting *State ex rel. Foote* v. *Bartholomew,* supra, 618. The plaintiff seeks to enforce an act to which it maintains it has a clear legal right and does not seek solely a determination of whether it has that right. In these circumstances, it cannot be said that a declaratory judgment is adapted to secure for the plaintiff its desired result as "effectively, conveniently, completely and directly" as would the issuance of a writ of mandamus.

Furthermore, a few months after *Jenks* was decided, this court considered in *Lerner Shops of*

*Connecticut, Inc.* v. *Waterbury,* 151 Conn. 79, 193 A.2d 472, the question of the appropriateness of a declaratory judgment as opposed to a writ of mandamus, where certain plaintiffs had sought a declaratory judgment that taxes based on the May 1, 1960 grand list of Waterbury were illegal. The *Lerner* court ruled that "[a]s far as the claimed failure to comply with the mandate of § 12-62 that real property be periodically revalued is concerned, the plaintiff had an adequate remedy by mandamus under the rule of *State ex rel. Eastern Color Printing Co.* v. *Jenks,* 150 Conn. 444, 451, 190 A.2d 591." Id., 93. This legal principle announced in *Lerner* conforms to the rules of practice in this state which have consistently granted trial courts discretion concerning declaratory judgments in that "the court will not render declaratory judgments upon the complaint of any person: . . . where the court shall be of the opinion that the parties should be left to seek redress by some other form of procedure." Practice Book, 1978, § 390 (c); see also Practice Book, 1951, § 277 (c); Practice Book, 1963, § 309 (c).

Similarly, the relief provided by General Statutes § 12-55—the assessor is subject to a five dollar fine for failure to comply with § 12-55—cannot, in these circumstances, be considered other adequate relief. Moreover, this statutory fine is applicable only to an assessor's failure to comply with any provision of § 12-55. It does not apply to the duty of periodic revaluation imposed by § 12-62, the provision upon which this action was initiated.

## II

The defendant Iorio also claims that the trial court erred in denying his motion on February 20, 1980, to open the judgment. Although the denial of

a motion to open a final judgment is appealable; *State* v. *Fahey,* 146 Conn. 55, 59, 147 A.2d 476; in these circumstances the denial of the motion to open can and should be reviewed together with the appeal from the final judgment. See Practice Book, 1978, § 3062.

The defendant Iorio, the present assessor, in an offer of proof by his counsel, in pursuing his motion to open, claimed that he would offer testimony different from that of former assessor Murphy with regard to whether a proper grand list could be filed by February 29, 1980. The trial court denied the motion after holding a hearing on February 22, 1980.

Although the trial court did not permit the defendant to introduce the testimony, it is apparent from the defendant's offer of proof that his motion was based upon what he would have us consider as newly discovered evidence. We assume without deciding that the proffered testimony would constitute newly discovered evidence and note that the criteria for granting such motions on the stated ground are well established where that evidence is claimed to impeach the credibility of a witness. " 'New trials are not granted upon newly discovered evidence which discredits a witness unless the evidence is so vital to the issues and so strong and convincing that a new trial would probably produce a different result. . . . The basic question which the trial court has to decide is whether upon all the evidence an injustice had been done. In deciding this question, the court has the exercise of a sound legal discretion, and its action cannot be disturbed unless this discretion has been abused.' *Turner* v. *Scanlon,* 146 Conn. 149, 163, 148 A.2d 334." *Lombardi* v.

*Bockholdt,* 167 Conn. 392, 395, 355 A.2d 270. See also *Dick* v. *Dick,* 167 Conn. 210, 227, 355 A.2d 110; *Comcowich* v. *Zaparyniuk,* 131 Conn. 40, 41–42, 37 A.2d 612.

In the present circumstances, we cannot say the trial court abused its discretion in denying the motion to open on the basis of the defendant's offer of proof. In its original judgment the court directed the assessor to comply with his statutory duty to revalue property which had not been revalued since 1965. The defendant Iorio's testimony as proposed would not show that the implementation of revaluation would be reasonably certain to result in injustice.

It cannot be doubted that between two assessors there will be disagreement and claims of errors, given that " 'the process of estimating the value of property for taxation is, at best, one of approximation and judgment, and that there is a margin for a difference of opinion.' " *Connecticut Coke Co.* v. *New Haven,* 169 Conn. 663, 668, 364 A.2d 178. Iorio has not been prevented from finding and correcting whatever errors Murphy might have made or overlooked. That Iorio believes there are additional errors, and that he has had insufficient time to discover all of them, would be no justification for his request that the court excuse or overlook the statutory requirement. Errors may be corrected through the statutory framework, either by the assessor; General Statutes § 12-60; or the tax review process. General Statutes § 12-111. Their existence, inevitable in any list, hardly justifies disregard of the duty to revalue mandated by statute. Further, nothing in Iorio's offer of proof was intended to

show that the old list, based on 1965 property values, would be, in 1980, error free or more fair than the revalued list.

There is no error.

In this opinion the other judges concurred.