BIJAN BAHRAMIAN *v.* EDWARD PAPANDREA

BOGDANSKI, PETERS, HEALEY, ARMENTANO and SHEA, Js.

Argued February 11—decision released April 28, 1981

1

*Alan M. Solomon,* for the appellant (defendant).
*Gianfranco Galluzzo,* for the appellee (plaintiff).

BOGDANSKI, J.   In this mandamus action, the defendant, the personnel director of the city of Meriden, appeals from a judgment ordering him to restore the plaintiff to the position of the city's planning director and to certify to the city comptroller that the plaintiff is eligible for the planning director's compensation.

On July 3, 1978, the plaintiff was hired as planning director subject to a twelve-month probationary period.[1]  From that date until October 10, 1978, he served as planning director under the direction, control, and supervision of the Meriden planning commission.[2]  On October 10, 1978, after the chair-

---

[1] Section 5.2 of the Policies and Procedures for Personnel of the city of Meriden states that "[a]ll original and all promotional appointments shall be tentative and subject to a probationary period of 3 to 12 months of actual service as determined by the appropriate department head and the Personnel Director."   Section 5.1 of the Policies and Procedures says that "[t]he probationary period shall be an integral part of the examination process and shall be utilized by the department head . . . to observe the new employee's work, to train and aid the new employee in adjustment to his position, and to reject any employee whose work performance fails to meet required work standards."

[2] General Statutes § 8-19 empowers any municipality to create by ordinance a planning commission consisting of five members whose terms of office and method of election or appointment shall be fixed

man of the planning commission refused to sign a discharge letter, the secretary of the planning commission advised the defendant and the plaintiff by letter that the plaintiff's employment was terminated and listed the reasons for discharging him. When the defendant received the letter, he caused a notice of dismissal to issue.

The trial court held that the chairman was the head of the planning commission and that the chairman's refusal to sign the letter of discharge rendered the dismissal of the plaintiff a violation of § 5.4 of the Policies and Procedures for Personnel of the city of Meriden, which states that "[a]t any time during the probationary period, a department head may remove an employee whose performance does not meet the required standards, provided that he shall report the removal and the reasons therefor in writing to the Director of Personnel and to the employee concerned." The court granted the plaintiff's request for a writ of mandamus.

A writ of mandamus may issue only when (1) the law imposes on the party against whom the writ would run a duty the performance of which is mandatory and not discretionary; (2) the party applying for the writ has a clear legal right to have the duty performed; and (3) there is no other specific adequate remedy. *Chamber of Commerce of Greater Waterbury, Inc.* v. *Murphy,* 179 Conn. 712, 717, 427 A.2d 866 (1980); *Bassett* v. *Atwater,* 65 Conn. 355, 360, 32 A.2d 937 (1895). See *Gerrity* v. *Bisciglia,* 178 Conn. 235, 238, 423 A.2d 871 (1979); *Kosinski* v. *Lawlor,* 177 Conn. 420, 426, 418 A.2d 66 (1979).

in the ordinance. Section 2-62 of the Meriden City Code which governs this litigation established a planning commission for the city and specified that the mayor shall appoint its members. Under the current city code the city council appoints commission members.

The defendant disputes the factual basis for the trial court's conclusion that the personnel director's adherence to the provisions of the Policies and Procedures for Personnel regarding hiring, firing, and retaining probationary employees was ministerial rather than discretionary. Our role in reviewing that basis is limited to determining whether the decision is clearly erroneous in light of the evidence and the pleadings in the whole record. Practice Book § 3060D; *Monroe Ready Mix Concrete, Inc.* v. *Westcor Development Corporation,* 183 Conn. 348, 351–52, 439 A.2d 362 (1981); *Pandolphe's Auto Parts, Inc.* v. *Manchester,* 181 Conn. 217, 221, 435 A.2d 24 (1980). The defendant testified that his duty requires him to see that the policies and procedures for personnel are administered properly; to certify to the comptroller that an employee has been appointed in accordance with the policies and procedures of the city; to coordinate the necessary steps to make an individual with a proper appointment an employee; and merely to process necessary papers to remove an individual from the payroll. When viewed in the context of the mandatory character of the applicable provisions of the Policies and Procedures for Personnel, that testimony amply supports the challenged conclusion that the defendant's duty is ministerial. Therefore, the court could have ordered the defendant to comply with his duty to certify that a properly appointed probationary employee remained such until dismissed in accordance with the Policies and Procedures for Personnel.

We disagree with the defendant's contention that the availability of other remedies renders erroneous the trial court's grant of mandamus. Relief which will preclude mandamus "must not only be adequate,

but it must be specific, that is, . . . adapted to secure the desired result effectively, conveniently, completely and directly upon the very subject matter involved." *State ex rel. Foote* v. *Bartholomew*, 103 Conn. 607, 618–19, 132 A. 30 (1925); see also *Chamber of Commerce of Greater Waterbury, Inc.* v. *Murphy*, supra, 720; *State ex rel. Eastern Color Printing Co.* v. *Jenks*, 150 Conn. 444, 451, 190 A.2d 591 (1963). The plaintiff seeks to enforce what he maintains is a clear legal right. He does not seek merely a determination that his dismissal was a nullity. Therefore a declaratory judgment would not secure the plaintiff's desired result as effectively, conveniently, completely, and directly as would a writ of mandamus. *Chamber of Commerce of Greater Waterbury, Inc.* v. *Murphy*, supra; *Lerner Shops of Connecticut, Inc.* v. *Waterbury*, 151 Conn. 79, 93, 193 A.2d 472 (1963). Moreover, one who has established a clear legal right in a mandamus action should not be subject to the scrupulous weighing of equities which limits access to injunctive relief.[3] See *Bassett* v. *Atwater*, 65 Conn. 355, 362, 32 A. 937 (1895).

---

[3] Although we have stated that mandamus "has been confined to situations where the aggrieved party has no adequate remedy either at law or in equity"; *Milford Education Assn.* v. *Board of Education*, 167 Conn. 513, 519, 356 A.2d 109 (1975); we now recognize that the scrupulous weighing of equities could in many cases render injunctive relief an inadequate substitute for mandamus. Our research has revealed only two cases which viewed an equitable remedy as an adequate alternative to mandamus. In neither of those cases did the equitable alternative provide the primary rationale for the decision. *State ex rel. Howard* v. *Hartford Street Ry. Co.*, 76 Conn. 174, 184, 56 A. 506 (1903); *Tobey* v. *Hakes*, 54 Conn. 274, 276, 7 A. 551 (1886). Furthermore *Howard* and *Tobey* conflict with our statement that "the existence of an equitable remedy is never a bar to the issuing of a mandamus." *Bassett* v. *Atwater*, 65 Conn. 355, 364, 32 A. 937 (1895). In most jurisdictions mandamus may issue even if equitable remedies are available. 55 C.J.S., Mandamus § 18; 52 Am. Jur. 2d, Mandamus § 57.

When an ouster is absolutely void, clearly without legal warrant or in total disregard of law, mandamus will restore the one illegally ousted. *State ex rel. Comstock* v. *Hempstead,* 83 Conn. 554, 558, 78 A. 442 (1910). Mandamus, however, "neither gives nor defines rights which one does not already have, it cannot, and does not, act upon a doubtful and contested right." *Gerrity* v. *Bisciglia,* supra, 238–39; *Boyko* v. *Weiss,* 147 Conn. 183, 186, 158 A.2d 253 (1960). In any litigated case the defendant in some way contests the plaintiff's right to the requested relief. But not every defense defeats a claim for mandamus. Here, a regulation gives a class of municipal employees a right to have their department head report their removal and the reasons therefor in writing. This right is clear, although the defendant contested the plaintiff's definition of the term "department head." The trial court correctly decided that it could construe a contested term in a mandamus action. *State ex rel. McNamara* v. *Civil Service Commission,* 128 Conn. 585, 24 A.2d 846 (1942) (construing "executive offices or positions").

We do not agree, however, with the trial court's determination that the chairman of the commission is a "department head" within the meaning of § 5.4 of the Policies and Procedures for Personnel.

The Policies and Procedures for Personnel of the city of Meriden designate the planning commission as a department and define a "department head" as the officially elected or appointed head of any one of the designated departments. Neither the General Statutes, the Meriden City Code, the Policies and Procedures for Personnel of the city of Meriden, any action of the planning commission, nor any

official election or appointment explicitly designated any individual or group as the department head of the Meriden planning commission.

General Statutes § 8-19 states that "[t]he commission shall elect a chairman and a secretary from its members." The election or appointment of one member of a commission, board, or authority as chairman, however, does not by itself make that member the head of the relevant department. For example, under General Statutes § 16-2 (b), the public utilities control authority elects its chairperson but pursuant to General Statutes §§ 16-1b and 4–5, the five member authority serves as head of the department of public utility control. Under General Statutes §§ 10-2 and 30-2, the governor shall select chairpersons for the state board of education and the liquor control commission, but pursuant to General Statutes § 4-5 the multi-member board and commission are their respective department's "department head" as that term is used in General Statutes §§ 4-6 and 4-7. The use of the pronoun "he" in § 5.4 of the Policies and Procedures for Personnel of the city of Meriden in reference to "department head" does not indicate that a "department head" must be an individual. See General Statutes § 4-8 which refers to each department head, including the multi-member heads as "he."

The General Statutes distinguish the chairman from the other members of the planning commission only in several details. The most significant of these empowers the chairman of the commission, if a regular member is absent or disqualified, to designate from among three alternates appointed or elected pursuant to statute, an alternate to act as a member of the commission. General Statutes

§ 8-19a. In exercising this power, however, the chairman must choose "alternates in rotation so that they shall act as nearly equal a number of times as possible." Ibid. Two other provisions, General Statutes §§ 8-25 and 8-29, require the chairman or secretary of the commission to endorse the commission's approval upon certain plans and maps. These limited special functions, two of which the chairman shares with the secretary, do not, however, support an inference that the chairman heads the department. Moreover, neither Meriden's City Code nor its Policies and Procedures for Personnel specifically differentiates the role of the chairman from that of the other members of the commission.

On the other hand, General Statutes § 8-22[4] empowers a planning commission to "engage such employees as are necessary for its work . . . [, to] contract with professional consultants . . . [and to] accept gifts." These three powers are of greater importance than those explicitly allocated to the chairman and are among the broad powers granted under General Statutes § 4-8[5] to one designated a

---

[4] "[General Statutes] Sec. 8-22. CONTRACTS AND EXPENDITURES. ACTION BY MAJORITY VOTE. The commission may engage such employees as are necessary for its work and may contract with professional consultants. The commission may accept gifts but all of its expenditures, exclusive of such gifts, shall be within the amounts appropriated for its purposes. Action of the commission shall be taken only upon the vote of a majority of its members."

[5] "[General Statutes] Sec. 4-8. QUALIFICATIONS, POWERS AND DUTIES OF DEPARTMENT HEADS. Each department head shall be qualified by training and experience for the duties of his office. . . . He shall conduct comprehensive planning with respect to the functions of his department and coordinate the activities and programs of the . . . agencies therein. He shall cause the administrative organization of said department to be examined with a view to promoting economy and efficiency. He shall organize the department and any agency therein into such divisions, bureaus or other units as he deems necessary for the efficient conduct of the business of the department

"department head" by § 4-5. Moreover, the provision of General Statutes § 8-22 that the planning commission shall act only upon the vote of a majority of its members indicates that the chairman has no power to frustrate the majority vote of the commission. Thus, in the absence of any contrary provision in any local ordinance, regulation, or official action we can reasonably assume that the city of Meriden incorporated into its Policies and Procedures for Personnel both the aversion of § 8-22 to allowing an individual to frustrate collective action and the preference of the General Statutes for granting powers of greater importance to the planning commission rather than to its chairman. We therefore conclude that the commission itself is the

and may from time to time abolish, transfer or consolidate within the department or any agency therein any division, bureau or other unit as may be necessary for the efficient conduct of the business of the department, provided such organization shall include any division, bureau or other unit which is specifically required by the general statutes. Each department head may appoint such deputies as may be necessary for the efficient conduct of the business of the department. Each department head shall designate one deputy who shall in the absence or disqualification of the department head or on his death, exercise the powers and duties of the department head until he resumes his duties or the vacancy is filled. Such deputies shall serve at the pleasure of the department head. Such appointees shall devote their full time to their duties with the department or agency and shall engage in no other gainful employment. Subject to the provisions of chapter 67, each department head shall appoint such other employees as may be necessary for the discharge of his duties. He is empowered to make regulations for the conduct of his department. Each department head may enter into such contractual agreements, in accordance with established procedures, as may be necessary for the discharge of his duties. Subject to the provisions of section 4-32, and unless otherwise provided by law, each department head is authorized to receive any money, revenue or services from the federal government, corporations, associations or individuals, including payments from the sale of printed matter or any other material or services. Each department head may create such advisory boards as he deems necessary."

head of the department within the meaning of § 5.4 of the Policies and Procedures for Personnel of the city of Meriden.

Although the defendant points to testimony in the transcript that before the secretary signed the letters to the plaintiff and to the personnel director, a majority of the planning commission voted to terminate the plaintiff, the trial court's memorandum of decision does not state that such a vote occurred and the plaintiff has not conceded the point. We cannot, therefore, direct that judgment enter against the plaintiff. We remand for the trial court to determine whether such a vote occurred.

There is error, the judgment is set aside and the case is remanded for further proceedings in accordance with this opinion.

In this opinion the other judges concurred.