JESSE MONROE ET AL. *v.* MIDDLEBURY CONSERVATION COMMISSION ET AL.

HEALEY, PARSKEY, ARMENTANO, SHEA and SPADA, Js.

Argued April 8—decision released June 29, 1982

*Brian A. Barnes,* for the appellants (named defendant et al.).

*J. Warren Upson,* for the appellant (defendant Pomperaug valley water authority).

*Perley H. Grimes, Jr.,* for the appellees (plaintiffs).

PARSKEY, J. On April 22, 1980, the named plaintiff, as nominee for a partnership known as "Aquaventure," submitted an application to the defendant Middlebury conservation commission for final review of a proposal to install two recharge basins, commonly referred to as aquifers, in 32± acres of land owned by the plaintiffs in Middlebury, a por-

tion of which land is subject to regulation as an inland wetland. The conservation commission is designated as the inland wetland agency for the town of Middlebury. The installation of these basins would permit the plaintiffs to test the potential yield of some twenty-six wells previously installed on the subject property in 1979 with the prior permission of the conservation commission.

The creation of these basins requires removal of some 92,700 cubic yards of sand and gravel. An application for an earth removal permit was duly filed with the Middlebury planning and zoning commission on or about February 7, 1980.

The defendant William P. Longo is the first selectman of the town of Middlebury. By letter dated March 21, 1980 from William J. Buckley, Sr., sanitary engineer of the state department of health services, Longo was informed that in 1978 the department had given conceptual approval to the proposed well field as a possible source of water for the Watertown water and sewer authority. Longo, by letter dated April 11, 1980, responded that he was surprised by the state action and informed Buckley that the proposed watershed lies within the jurisdiction of the Pomperaug Valley water authority and that, in the opinion of the Middlebury town attorney, proper application would have to be made to the water authority, the conservation commission, and the planning and zoning commission. Longo sent a copy of the correspondence to the conservation commission which thereupon sought an opinion from the town attorney.

By letter dated March 20, 1980, the water authority, acting through its attorney, advised the named

plaintiff that he was not entitled to process his application before either the conservation or zoning commission until he had taken the steps mandated by the charter of the water authority. A letter, dated May 6, 1980, to the same effect was sent by the Middlebury town attorney to the plaintiffs' attorney.

Upon refusal of the several commissions to process the plaintiffs' applications until the plaintiffs had processed their application before the water authority, the plaintiffs sought an injunction to compel the conservation commission to conduct a public hearing on the plaintiffs' application for recharge basins, to compel the zoning commission to conduct a public hearing on the plaintiffs' application for an earth removal permit, and to restrain the water authority from interfering with the plaintiffs' right to a public hearing before the conservation commission and the defendant Longo from interfering with the plaintiffs' right to a public hearing before both commissions. The trial court found that the plaintiffs were entitled to the claimed hearings, granted injunctive relief accordingly, and the defendants appealed.

In their appeal, the defendants claim: (1) that the plaintiffs should have been required to seek a writ of mandamus against both commissions; (2) that the trial court erred in concluding that the plaintiffs were not required to process their application first with the water authority; and (3) that there was no factual basis for the issuance of an injunction against Longo.

# I

## The Mandamus Alternative

We first consider the defendants' contention that a mandatory injunction should not have been issued because of the availability of an adequate remedy at law, to wit, a writ of mandamus. Both mandamus and mandatory injunction are extraordinary remedies. " 'The writ of mandamus is an extraordinary remedy to be applied only under exceptional conditions, and is not to be extended beyond its well-established limits.' *Lahiff* v. *St. Joseph's Total Abstinence [and Benevolent] Soc.,* 76 Conn. 648, 651, 57 A. 692 [1904]." *Milford Education Assn.* v. *Board of Education,* 167 Conn. 513, 518, 356 A.2d 109 (1975). "Relief by way of mandatory injunction is an extraordinary remedy granted in the sound discretion of the court and only under compelling circumstances." *Simmons* v. *Budds,* 165 Conn. 507, 515, 338 A.2d 479 (1973), cert. denied, 416 U.S. 940, 94 S. Ct. 1943, 40 L. Ed. 2d 291 (1974). Ordinarily, an injunction will not lie where there is an adequate remedy at law. *Hartford* v. *American Arbitration Assn.,* 174 Conn. 472, 476, 391 A.2d 137 (1978). Ordinarily, mandamus will not lie where the aggrieved party has an adequate remedy either at law or in equity. *Milford Education Assn.* v. *Board of Education,* supra, 519; *State ex rel. Howard* v. *Hartford Street Ry. Co.,* 76 Conn. 174, 184, 56 A. 506 (1903). Mandamus is not only "generally viewed as a remedy at law"; *Stolberg* v. *Caldwell,* 175 Conn. 586, 613, 402 A.2d 763 (1978) ; but usually it is also the appropriate remedy in situations where: (1) the duty to be performed is ministerial; (2) the party applying for the writ has a clear legal right to have the duty performed; and (3) there

is no other sufficient remedy. *Milford Education Assn.* v. *Board of Education,* supra, 518. There are situations, however, where the use of one remedy rather than the other involves a matter of semantics. *Bissey* v. *Marion,* 104 Kan. 311, 178 P. 611 (1919) ; annot., 93 A.L.R. 1495, 1503 and cases cited therein; 42 Am. Jur. 2d, Injunctions § 43. "If the [plaintiff] is entitled to relief, it is not of great importance whether we grant the relief by way of the legal writ of mandamus or the equitable remedy of injunction or by a combination of both." *In re Alexander,* 243 A.2d 901, 903 (D.C. App. 1968).

The result would be the same were we to test the appropriateness of equitable relief on the basis of the adequacy of mandamus. The complaint, which is in four counts, alleges that the conservation and the planning and zoning commissions have refused to hold public hearings on the plaintiffs' application to install recharge basins in areas subject to their jurisdiction because of the plaintiffs' failure to obtain prior approval of their plan from the water authority. It also alleges that the water authority and the defendant Longo improperly interfered with the plaintiffs' right to public hearings before the two commissions. It is apparent from even a cursory perusal of the complaint that, if the plaintiffs could prove their allegations, mandamus could not afford them complete relief. So long as the water authority, with some reasonable basis, maintained that it had superior authority in matters involving potential depletion of water resources and that therefore no hearing should be held by the other bodies until the water authority had given its approval to the plaintiffs' application, any relief provided by mandamus would be inadequate. Any action taken by the commissions

would leave the plaintiffs' application under a cloud. Resort to equity is appropriate both to avoid multiplicity of actions at law; *Dimmock* v. *New London,* 157 Conn. 9, 19, 245 A.2d 569 (1968); *Hammerberg* v. *Leinert,* 132 Conn. 596, 602, 46 A.2d 420 (1946); and to provide effective, convenient, direct, and complete relief. *Aaron* v. *Conservation Commission,* 178 Conn. 173, 179, 422 A.2d 290 (1979); *State ex rel. Heimov* v. *Thomson,* 131 Conn. 8, 13, 37 A.2d 689 (1944). Because the plaintiffs' rights could not be determined without addressing the concerns of the water authority, injunctive action was appropriate.

## II

### THE POWER OF THE WATER AUTHORITY

The Pomperaug Valley water authority was created by Special Act of the 1969 General Assembly (Spec. Acts No. 174) as amended by Special Acts No. 72 of the 1971 General Assembly. At the time of trial, three towns (Middlebury, Southbury and Oxford) had voted to become members of the district authority so created. Basically, the aforesaid enactments grant powers to the water authority to provide, to maintain, and to construct water supply systems within the district where no such water supply system exists, or, in the alternative, to allow any town, city, borough, corporation, company, association or person intending to develop for water supply purposes a potential surface reservoir to commence such a water supply development so long as it comports with the regional supply plan of the Pomperaug Valley water authority for the member towns and so long as there exists an estimated dependable yield of more than 500,000 gallons of water per day, or one or more wells with

estimated combined potential yields of more than 50 gallons per minute. Section 4 of the 1971 special act also provides that upon application made to the water authority, the developer must disclose its intention to develop a water supply system and indicate its anticipated water requirements.

Section 4 goes on to provide that "[w]ithin three months of being so notified the authority shall determine whether or not such water supply development would affect the *regional water supply plan* of the authority. If in the authority's judgment such plan will not be affected, the authority shall release such potential water supply site for development by such city, town, borough, corporation, company, association or person; otherwise the authority shall promptly select an engineer satisfactory to such city, town, borough, corporation, company, association or person to design and supervise construction of facilities to satisfy such water requirements, construction of which shall be commenced by the authority upon approval of plans by such city, town, borough, corporation, company or person, the costs thereof to be allocated between the authority and such city, town, borough, corporation, company, association or person as provided in the *rules and regulations* of the authority." (Emphasis added.) The act further provides that failure of the authority to act within the prescribed time limit shall constitute an approval for development of the site or well field by the city, town, borough, corporation, company, association, or person concerned.

The water authority by virtue of the special act is a municipal corporation. *Windham Community Memorial Hospital* v. *Willimantic*, 166 Conn. 113, 121, 348 A.2d 651 (1974); *Sachem's Head Property*

*Owners' Assn.* v. *Guilford,* 112 Conn. 515, 517, 152 A. 877 (1931). As a creature of the state it possesses no inherent power of its own. *Pepin* v. *Danbury,* 171 Conn. 74, 83, 368 A.2d 88 (1976). It can exercise only such powers as are expressly granted or necessarily implied to enable it to carry into effect the objects and purposes of its creation. *Board of Police Commissioners* v. *White,* 171 Conn. 553, 559, 370 A.2d 1070 (1976).

The water authority is an administrative agency which, under the special act, is granted certain powers over the water supply within the area subject to its jurisdiction. Anyone proposing a water supply plan which could affect the water authority's regional water supply plan must first submit such plan to the authority for comparison. This provision presupposes the existence of such a regional plan. To hold otherwise, to permit an administrative agency to develop an ad hoc plan as a yardstick against which to measure any given proposal, is to substitute whimsy for sound judgment. *RK Development Corporation* v. *Norwalk,* 156 Conn. 369, 377, 242 A.2d 781 (1968). Giving an administrative agency such absolute power could deprive a landowner of his property, without due process of law. *Id.;* *Helbig* v. *Zoning Commission,* 185 Conn. 294, 310, 440 A.2d 940 (1981). Although due process is not intended to hold administrative agencies under a short leash, it is designed to restrain them from roaming at will over the adjudicative landscape. To avoid such constitutional problems, statutes sometimes specifically preclude an administrative agency from exercising its statutory powers until it adopts appropriate regulations to govern its doings. *Finn* v. *Planning & Zoning Commission,* 156 Conn. 540, 543, 244 A.2d 391

(1968) ; *Beach* v. *Planning & Zoning Commission,* 141 Conn. 79, 83, 103 A.2d 814 (1954). But even in the absence of a specific provision to that effect, because of the constitutional implications, a statute will be construed as embodying such provision unless the terms of the statute preclude such requirement. *Grega* v. *Warden,* 178 Conn. 207, 210, 423 A.2d 873 (1979). Applying this principle to the present case, we hold that the water authority is not empowered to act on applications for water supply plans until it first publishes its own regional water supply plan. The trial court's conclusion that the plaintiffs were not required at this time to submit to the authority their recharge basin proposal was therefore correct. This being so, it is of no significance whether the trial court's grounds for this conclusion were also correct. See *Favorite* v. *Miller,* 176 Conn. 310, 317, 407 A.2d 974 (1978).

## III

### THE INJUNCTION AGAINST LONGO

Normally this court would remand for articulation where, as in this case, the factual basis of the trial court's decision to order a prohibitive injunction against the defendant Longo is unclear from the memorandum of decision. Practice Book § 3096. Here, however, the defendant Longo was also subject to the mandatory injunctions issued against the zoning and conservation commissions by virtue of his status as ex officio member of both commissions. The further negative injunction restraining Longo from interfering with the public hearings ordered places no additional burden upon him. Any technical error in issuing the prohibitive injunction

without factual basis would, therefore, be harmless. *Harrison* v. *Union & New Haven Trust Co.*, 147 Conn. 435, 440, 162 A.2d 182 (1960).

There is no error.

In this opinion Healey, Armentano and Spada, Js., concurred.

Shea, J. (dissenting in part). I agree fully with Part I and Part II of this opinion.

I disagree with Part III which affirms the injunction against the defendant William P. Longo despite recognition of the absence of any factual basis in the memorandum of decision to support its issuance. The deficiency, however, is not one which could be cured by a further articulation of the decision, because the only evidence claimed by the plaintiffs to support the injunction against the defendant Longo is set forth in the memorandum. This evidence indicates that his role was limited to writing a letter stating that the application of the plaintiffs should first be submitted to the defendant Pomperaug Valley water authority for approval, a position taken also by counsel for the town and the defendant commission.

An injunction to prohibit unlawful interference with another may be regarded as placing no greater burden upon the person enjoined than the law already imposes. It has never been suggested heretofore, nevertheless, that such an injunction may be issued without first proving that illegal acts have been performed or threatened by the party to be enjoined. Without a finding that the defendant

Longo did or was likely to interfere unlawfully with the plaintiffs, he was entitled to prevail.

I would remand the case to the trial court with direction to modify the judgment to eliminate the injunction against the defendant Longo.