[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION ON APPLICATION FOR TEMPORARY INJUNCTION
Commencing in 1991, a rock quarry operation was permitted on the subject property at least until 1993. The defendant Amalfi is the present owner of the quarry property, having acquired it from the defendant New Haven Savings Bank. Amalfi has done no work on the property since acquiring it.
The plaintiff is the owner of adjoining property, which it acquired in January or February of 1995. The plaintiff is seeking a temporary and permanent injunction and damages to its property, as a result of the quarry activity conducted by one or more of the prior occupants of the site. In the course of that activity in 1991, the blasting company hired by a quarry operator blasted in close proximity to the land now owned by the plaintiff. This blast collapsed an area which protruded into the property now owned by the plaintiff, the so called "Dwyer Farm". In addition, the unsupervised and unregulated quarrying activity created a landscape of steep cliffs and overhangs all along the quarry parcel and all in violation of the zoning code. The plaintiff's parcel suffered an incursion creating a steep unstable cliff 40 feet in length encompassing 100 square feet.
At the time the plaintiff acquired the Dwyer Farm, it was aware of this encroachment. A representative of the plaintiff who testified in support of its application was also aware of the encroachment and on June 8, 1994, he appeared before the East Haven Planning and Zoning Commission and presented a proposal to alleviate the existing conditions. On this application, it was represented that both the quarry and the Dwyer Farm would be under one ownership. This application was for work on the quarry of property, primarily, and it was represented that "any dangerous and unsafe areas, at that time they will be regraded until they are considered a safe area."
No cease and desist order for code violations was issued by the town until June 8, 1994 by which time the defendant bank had title to the property.
The plaintiff seeks a mandatory temporary injunction ordering the defendant Amalfi to restore the 40 foot area where the "overblast" occurred. This would entail the addition of 35,000 cubic yards of fill at a projected cost of $350,000.00.
DISCUSSION
CT Page 6282
 I
There is no question that this quarry operation has created a hazardous condition, not to mention an aesthetic atrocity. However, the remedy the plaintiff seeks would eliminate the safety hazard on an insignificant portion of this total defacement. Of significance is the fact that though the plaintiff describes this as "a matter of life and death", there is scant evidence to support this allegation. Trash has been discarded, vehicles and persons have trespassed on the plaintiff's property, and children have been seen on the top of the cliffs.
This does not approach proof of such a hazardous condition that it cries out for an extraordinary remedy.
Even if the court were to adopt the plaintiff's premise, the danger complained of would be reduced over a space of 40 feet, leaving several hundred feet with the danger unabated. Courts should not consider extraordinary relief which has no remedial effect and which accomplishes nothing. Karls v. Alexander RealtyCorporation, 179 Conn. 390, 403 (1980).
 II
In order to justify the granting of the extraordinary relief requested, the plaintiff must show irreparable harm and the lack of an adequate remedy at law. Monroe v. Middlebury ConservationCommission, 187 Conn. 476, 480 (1982); Stocker v. City ofWaterbury, 154 Conn. 446 (1967); Pet v. Department of HealthServices, 207 Conn. 346, 370 (1988).
The plaintiff has not shown its situation to meet this test. The condition complained of can be corrected by the expenditure of money, as related by the plaintiff's expert. Should it prevail on the merits, damages recovered could be applied as the expert recommended.
Thus, the harm complained of can be corrected and money damages can accomplish that remedy.
If the plaintiff were to prove a loss in the value of his property (assuming the defendants are liable) as stated in his allegations, that too can be addressed via a damage award.
III
CT Page 6283
It is also basic law that a temporary injunction should not issue unless it is reasonably certain the plaintiff will prevail in the end. Griffin Hospital v. Commission on Hospitals HealthCare, 196 Conn. 451, 457 (1985).
The plaintiff has not demonstrated that the outcome of this case will necessarily be in its favor.
The actual perpetrator of this debacle is not a defendant and has apparently drifted off into the night. The court finds it significant that the plaintiff and its principals knew of this condition before the Dwyer Farm was purchased. At least one of its "representatives" was prepared to profit from the use of the offending parcel, calling to mind whether the "clean hands" doctrine might be applied here were the claim not so obviously flawed in other respects.
CONCLUSION
It is therefore the conclusion of the court that the plaintiff's application for a temporary injunction should be denied.
Anthony V. DeMayo State Trial Referee